TERRY L. STROUP, APPELLANT, *v.* THE
STATE OF NEVADA, RESPONDENT.

No. 24302

May 19, 1994                                   874 P.2d 769

*Nathan Tod Young,* Minden, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Art Wehrmeister,* District Attorney, *Gary W. Barr,* Deputy District Attorney, and *Kirk Vitto,* Deputy District Attorney, Nye County, for Respondent.

## OPINION

*Per Curiam:*

### FACTS

Appellant Terry L. Stroup ("Stroup") and his friend, Melvin Skoglund ("Skoglund") worked as woodcutters. Their employer was Larry Miller ("Miller"), who owned the Salisbury Ranch near Tonopah. In September 1992, Stroup and Skoglund were living in a tent at a wood camp in a remote area called Baxter Springs.

During one of their weekly trips to Tonopah for provisions, Stroup and Skoglund encountered the victim Larry Dixon ("Dixon"), who was an acquaintance of theirs. Dixon asked if he could accompany them back to the wood camp as he had no place to stay. He told them that he had been accused of stealing from the person with whom he had been living and had been asked to leave. Stroup and Skoglund reluctantly allowed Dixon to return with them to the wood camp.

The following morning, September 3, 1992, two more people, Sharon Lundy ("Lundy") and her boyfriend Allen Elliot ("Elliot"), came to the camp to cut wood. In the afternoon, after splitting wood for several hours and drinking heavily, Stroup and Skoglund returned to their tent to sleep. Lundy, Elliot and Dixon remained outside.

A short time later, Skoglund awoke to find Dixon beating him. Dixon was apparently upset by an argument between Lundy and Skoglund which had taken place earlier in the day, but which had been settled amicably. Dixon left the tent and then returned shortly thereafter and continued to beat Skoglund. Dixon left and returned a third time. Skoglund later testified that Dixon also began hitting Stroup. Dixon then left and returned a fourth and fifth time. The fifth time Dixon returned, Stroup shot and killed him. It is unclear whether Dixon had completely entered the tent when he was shot or whether he was immediately outside. Lundy later testified that Dixon had been "acting like a madman" prior to and during the attack.

Later that evening, Stroup and Skoglund took Dixon's body to Miller's ranch. The following morning, Miller told another employee to take Stroup into town, after which Miller and Skoglund buried Dixon's body on the property with a backhoe.

Miller later reported his actions to the Nye County Sheriff's Office. Stroup was arrested and later charged with murder with the use of a deadly weapon pursuant to NRS 200.010, NRS 200.030, and NRS 193.165.

A jury trial was held. The jury found Stroup guilty of second degree murder, but made no finding as to the use of a deadly weapon. The district court sentenced Stroup to eleven years for second degree murder with an enhancement pursuant to NRS 193.165 of eleven years for the use of a deadly weapon. The judgment of conviction filed by the court stated that "[t]he court adjudged the Defendant guilty of the crime(s) of murder in the second degree with the use of a deadly weapon." However, the jury verdict form only mentioned second degree murder. This appeal ensued.

Stroup asserts a number of errors on appeal, including: (1) the district court unconstitutionally enhanced his sentence for the use of a deadly weapon in light of the fact that the jury made no specific finding that he had used a deadly weapon in the commission of the crime; and (2) the district court erred in refusing to give his proffered instruction regarding justifiable homicide.

## DISCUSSION

We first address Stroup's assertion that the district court improperly enhanced his sentence pursuant to NRS 193.165 in light of the fact that the jury did not make a finding as to the use of a deadly weapon. NRS 193.165(1) provides that a crime committed with the use of a deadly weapon shall be enhanced by imprisonment for a term equal to and in addition to the term of imprisonment prescribed by statute for the crime. However, NRS 193.165(2) states that the statute "does not create any separate offense but provides an additional penalty for the primary offense, *whose imposition is contingent upon the finding of the prescribed fact.*" (Emphasis added.)

We addressed the use of NRS 193.165 in Zgombic v. State, 106 Nev. 571, 798 P.2d 548 (1990). *Zgombic* involved the question of whether construction boots were a deadly weapon. There, we held that some weapons can be determined as a matter of law to be inherently dangerous, and thus the only question remaining for the trier of fact is whether the deadly weapon was used in the commission of the crime. *Id.* at 577, 798 P.2d at 551-52. If it is not clear whether the weapon is deadly, the jury must then determine that issue in addition to whether the weapon was used to commit the crime. *Id.* Regardless of whether the weapon is deadly or not, the jury *must* determine whether that weapon

was indeed used to commit the crime before NRS 193.165 may be utilized to enhance a defendant's sentence.

The State contends that it would be absurd to argue that the jury could have returned a verdict in this case of guilty without the use of a deadly weapon when there was no doubt that Stroup used a gun to kill Dixon. However, we note that it is irrelevant whether it was obvious that Stroup used a deadly weapon to commit the crime. It is also irrelevant whether the jury's verdict was due merely to a failure to include a finding of the use of a deadly weapon on the verdict form. NRS 193.165 requires the jury to find the use of a deadly weapon in the commission of the crime before the defendant's sentence may be enhanced. In this case, the jury made no such finding. Accordingly, we reverse the enhancement of Stroup's sentence for the use of a deadly weapon.

We next address Stroup's assertion that the district court erred in refusing his proffered jury instruction as to justifiable homicide. At trial, Stroup requested that the following instruction be given to the jury:

> If you find that Terry Stroup killed Larry Dixon at a time when Dixon was intending or endeavoring in a violent, riotous, tumultuous, or surreptitious manner to enter the habitation of Terry Stroup and Mr. Skoglund for the purpose of assaulting or offering personal violence to either of them, then the killing was justifiable and it is your duty to return a verdict of not guilty.

The court rejected this instruction in favor of the following:

> Justifiable homicide is the killing of a human being in necessary self-defense, or in defense of habitation, property or person, against one who manifestly intends, or endeavors, by violence or surprise, to commit a felony, or against any person or persons who manifestly intend and endeavor, in a violent, riotous, tumultuous or surreptitious manner, to enter the habitation of another for the purpose of assaulting or offering personal violence to any person dwelling or being therein.

We have held that it is not error to refuse to give an instruction when the law encompassed therein is substantially covered by another instruction given to the jury. Ford v. State, 99 Nev. 209, 211, 660 P.2d 992, 993 (1983). However, we have also held that a defendant has the right to have the jury instructed on his theory of the case as disclosed by the evidence, no matter how weak or incredible the evidence might be. Margetts v. State, 107 Nev. 616, 619-20, 818 P.2d 392, 394 (1991). Stroup contends that he

was denied due process in light of *Margetts* because the court refused to give his offered instruction on justifiable homicide.

Stroup misinterprets our holding in *Margetts*. While *Margetts* does give the defendant the right to have the jury instructed on his theory of the case, *Margetts* does not give the defendant the absolute right to have his own instruction given, particularly when the law encompassed in that instruction is fully covered by another instruction. Stroup's theory of the case was justifiable homicide. The instruction given by the court fully encompassed this theory of defense. Thus, Stroup's jury was sufficiently instructed on his theory of the case. Accordingly, we cannot conclude that the district court erred in refusing to give Stroup's proffered instruction regarding justifiable homicide.

In summary, we affirm Stroup's conviction. However, we hold that the district court erred in enhancing Stroup's sentence pursuant to NRS 193. 165 for the use of a deadly weapon when the jury made no finding as to that fact. We therefore reverse the district court's enhancement of Stroup's sentence for the use of a deadly weapon. We have carefully considered Stroup's other assertions of error and find them to be without merit.

SPRINGER, J., dissenting:

Stroup's defense in this case is that he was defending himself, or, more particularly, that he was defending his "habitation," in this case a tent. Dixon kept intruding into Stroup's tent, assaulting Stroup and his tent-mate and "acting like a madman," until, on the fifth break-in, Stroup shot Dixon.

Stroup, properly and understandably, asked the trial court to instruct the jury that if it found him to be acting in his own defense, the jury had a "duty to return a verdict of not guilty." The trial court refused to give such an instruction. By refusing to tell the jury that it should acquit Stroup if it found self defense or "defense of habitation," Stroup was denied a fair trial.

The trial court did give to the jury a technical definition of "justifiable homicide," but the court refused to go further and advise the jury that if self-defense or defense of habitation were found, it should then acquit the defendant. The trial court's technical instruction defining justifiable homicide may have had some meaning to a law student, but it was of no use to the jury absent the specific instruction that this kind of homicide must result in a not guilty verdict.[1] The Majority apparently sees

---

[1]The California Criminal form jury instructions set forth the following jury instruction to be given "when the evidence to support the issue of justification or excuse is properly presented in a homicide case":

> Upon a trial of a charge of murder, a killing is lawful, if it was [justifiable] [excusable]. The burden is on the prosecution to prove

nothing wrong with refusing to instruct the jury that a jury finding of justifiable homicide must result in acquittal, and it does not even discuss the point. I would reverse this case based on my conviction that if the jury had been instructed properly, it would have been aware of its "duty to return a verdict of not guilty" and would have returned such a verdict.

---

beyond a reasonable doubt that the homicide was unlawful, that is, not [justifiable] [excusable]. *If you have a reasonable doubt that the homicide was unlawful, you must find the defendant not guilty.*
*California Jury Instructions, Criminal,* 5.15 (5th ed. 1988) ("CALJIC") (emphasis added). This is all Stroup wanted in this case, and I believe that he was entitled to have the jury instructed in such a manner.