OPINION ON REHEARING
 
 [1]
 

 Per Curiam:
 

 The district court convicted appellant David Wayne Crawford, upon a jury verdict, of the first-degree murder of Gloria Dugan with the use of a deadly weapon. In this appeal from his conviction, Crawford argues that the district court erred by: (1) instructing the jury on a theory of criminal culpability that the State had not alleged in the amended information; (2) refusing to instruct the jurors that they had to unanimously agree that Crawford committed burglary before considering the State’s felony-murder theory; (3) refusing to give the defendant’s proposed jury instructions on heat of passion and diminished capacity; and (4) curtailing his cross-examination of a witness.
 

 We reject all of Crawford’s contentions but one. In resolving Crawford’s contention respecting his proposed jury instruction on heat of passion, we have revisited our prior decisions addressing a criminal defendant’s entitlement to instructions advising the jury of the significance of the defendant’s theory of defense. We now retreat from our holding in
 
 Stroup v. State
 

 [2]
 

 and overrule that decision to the extent that it permits the district court to reject a criminal defendant’s proposed jury instructions specifically advising the jury of the significance of the defense theory of the case. We further conclude, however, that under the facts and circumstances of this case any error respecting the jury instruction at issue was harmless beyond a reasonable doubt. Accordingly, we affirm Crawford’s conviction.
 

 
 *747
 

 FACTS
 

 The victim, Gloria Dugan, dated Crawford for approximately seven months while she resided in the Las Vegas residence of her fiancé, a serviceman who was stationed in Korea at the time. Crawford believed that Dugan was going to end the engagement and at one point contacted Dugan’s fiancé and informed him that Dugan planned on ending their engagement and marrying Crawford instead.
 

 Throughout the weekend prior to the murder, however, Dugan avoided Crawford. On Sunday night, March 24, 1997, Dugan visited a friend, Michael Lemon, at his apartment where they watched a movie. Telephone records indicated that Crawford placed several unanswered calls to Dugan’s residence that evening. Crawford was upset and believed that Dugan was avoiding him because she was involved with another man. Around 10:25 p.m., on Sunday night, Crawford went to Dugan’s residence to discuss their relationship. According to Crawford, he took his gun to scare Dugan into telling the truth.
 

 Dugan had returned home by the time Crawford arrived. She let Crawford into the house, and eventually their conversation became heated. Crawford confronted her about whether she was dating another man. Dugan denied seeing anyone else, but Crawford did not believe her. He claimed he displayed his gun without pointing it at her, hoping that it would make her take him seriously. When Dugan smirked in response, Crawford became enraged and shot Dugan numerous times, killing her in what he described as the “heat of the moment.” Afterward in a hysterical state, he called a friend and told her that he had killed Dugan because she was lying to him. Subsequently, Crawford unsuccessfully attempted suicide by slitting his wrists.
 

 The State arrested Crawford and eventually charged him by way of an amended information with first-degree murder with the use of a deadly weapon. The information alleged two alternative theories of first-degree murder: (1) that Crawford committed a willful, deliberate, and premeditated murder, as defined in NRS 200.030(l)(a); and (2) that under NRS 200.030(l)(b), Crawford committed felony murder by killing Dugan during the perpetration or attempted perpetration of a burglary that occurred when Crawford entered Dugan’s residence with the intent to assault, batter, or kill Dugan.
 

 The jury found Crawford guilty of first-degree murder with the use of a deadly weapon. Following the penalty phase of the trial, and in accord with the jury’s sentencing verdict, the district court sentenced Crawford to serve two consecutive terms of life in the Nevada State Prison with the possibility of parole. Crawford will
 
 *748
 
 be eligible for parole after he serves a minimum of 40 years. This appeal followed.
 

 DISCUSSION
 

 The
 
 “bedroom”
 
 burglary instruction
 

 Crawford contends that the district court erred in instructing the jury that “[a]ny person, who by day or night, enters any house,
 
 room,
 
 apartment, tenement, shop, warehouse, store, other building, automobile or other vehicle with the specific intent to commit assault and/or battery and/or to kill is guilty of burglary.” (Emphasis added.) Specifically, Crawford asserts, this instruction violated his right to due process because it permitted the jury to convict him based upon a theory of felony murder that was not alleged in the amended information and of which he had no prior notice,
 
 i.e.,
 
 that he committed burglary after he entered the house and when he stepped across the threshold of Dugan’s bedroom.
 

 The district court has broad discretion to settle jury instructions, and this court reviews the district court’s decision for an abuse of that discretion or judicial error.
 
 [3]
 
 “An abuse of discretion occurs if the district court’s decision is arbitrary or capricious or if it exceeds the bounds of law or reason.”
 
 [4]
 
 We perceive no abuse of discretion or judicial error. The instruction correctly stated the law and summarized the statutory definition of burglary.
 
 [5]
 
 Furthermore, at trial, the State did not present a “bedroom burglary theory,” but instead argued, as alleged in the information, that Crawford entered Dugan’s
 
 residence
 
 with the intent to assault, batter or kill her. The State never departed from its theory of the case; nor did it pursue an unnoticed theory of criminal culpability. Crawford’s contention is without merit.
 

 The proposed unanimity instruction re: burglary
 

 Crawford argues that the district court erred in refusing his proposed jury instruction stating: “You must be unanimous on the burglary allegation before any of you may consider the charge of
 
 *749
 
 Felony Murder.” Citing to
 
 Apprendi
 
 v.
 
 New Jersey,
 

 [6]
 

 Crawford argues that the jurors should have been required to unanimously agree on the underlying felony of burglary before they deliberated on the felony-murder charge. We disagree.
 

 First, although the commission of the underlying burglary is an essential element of the offense of felony murder, there is no requirement that any of the jurors must consider that element first in deliberating on a felony-murder charge.
 
 [7]
 
 The district court properly instructed the jury on the elements of felony murder as follows:
 

 There are certain kinds of Murder in the First Degree which carry with them conclusive evidence of premeditation, deliberation and malice aforethought. One of these classes of First Degree Murder is a killing committed in the perpetration or attempted perpetration of Burglary. Therefore, a killing which is committed in the perpetration or attempted perpetration of a Burglary is deemed to be Murder in the First Degree, whether the killing was intentional or unintentional or accidental. This is called the Felony-Murder Rule.
 

 This Felony-Murder rule may be applied to this case even though the Defendant has not been charged with the crime of Burglary.
 

 The specific intent to perpetrate or attempt to perpetrate Burglary must be proven beyond a reasonable doubt.
 

 As noted, the jury was also properly instructed respecting the charge of burglary and the other alleged underlying crimes of assault and battery. Thus, the jury was clearly and correctly instructed that Crawford could not be found guilty of felony murder unless he committed the killing during the perpetration of a burglary.
 
 [8]
 
 To the extent that Crawford may contend otherwise, we reject that contention.
 

 Second, we also reject Crawford’s contention that
 
 Apprendi
 
 calls into question this court’s prior holdings concluding that jury una
 
 *750
 
 nimity on a single theory of the crime is not required.
 
 [9]
 
 Where the State proceeds on alternative theories of first-degree felony murder and willful, deliberate, and premeditated first-degree murder, we have consistently held that the jury need not unanimously agree on a single theory of the murder.
 
 [10]
 
 In
 
 Apprendi,
 
 the Supreme Court held that facts in support of a sentencing enhancement, other than a prior conviction, must be determined by the jury beyond a reasonable doubt.
 
 [11]
 

 Apprendi
 
 does not undermine the rationale of our holdings respecting jury unanimity on alternative theories of murder and provides no support for revisiting our reasoning on that issue.
 

 Under our prior holdings, the jury was properly instructed in this case that its verdict had to be unanimous as to the charge of first-degree murder, but that unanimity was not required on whether that charge was established under a theory of felony murder or under a theory of willful, deliberate, and premeditated murder. It follows, therefore, that Crawford’s proposed instruction requiring all of the jurors to be unanimous on the burglary allegation before any of the jurors could consider the charge of felony murder is legally erroneous. Any jurors who found beyond a reasonable doubt that Crawford committed a willful, deliberate, and premeditated murder were under no legal obligation to consider the felony-murder theory at all, let alone the element of burglary at issue under that theory.
 

 The proposed “heat-of-passion” instruction
 

 Crawford argues that the district court committed reversible error by refusing to give his proposed jury instruction K. The instruction read:
 

 If after consideration of all the evidence you have a reasonable doubt as to whether or not the defendant acted in a heat of passion, you must return a verdict of voluntary manslaughter. This is because the state has the burden of proving beyond a reasonable doubt that the defendant did not act in the heat of passion.
 

 The district court rejected the proposed instruction on the ground that it was substantially covered by the other instructions. As dis
 
 *751
 
 cussed below, we conclude that the district court erred in refusing to provide an instruction incorporating the substance of Crawford’s proposed language. Nevertheless, we also conclude that under the facts and circumstances of this case the error was harmless beyond a reasonable doubt.
 

 This court has consistently held that “the defense has the right to have the jury instructed on its theory of the case as disclosed by the evidence, no matter how weak or incredible that evidence may be.”
 
 [12]
 
 The jury in this case was not specifically or expressly instructed that the State had the burden to prove beyond a reasonable doubt that Crawford did not act in the heat of passion and upon the provocation required by law. The jury was instructed generally that the State had the “burden of proving beyond a reasonable doubt every material element of the crime charged,” and that if it “was not satisfied beyond a reasonable doubt” that Crawford committed first-degree murder, it could find him guilty of any lesser included offense, including voluntary manslaughter if the evidence was “sufficient to establish his guilt of such lesser offense beyond a reasonable doubt.” Additionally, as the State emphasizes, the jury was instructed: “If you are convinced beyond a reasonable doubt that an unlawful killing has been committed by the defendant, but you have a reasonable doubt whether such killing was murder or manslaughter, you must give the defendant the benefit of that doubt and return a verdict of Voluntary Manslaughter.” Citing to
 
 Stroup v. State,
 
 the State argues that no additional instructions were required.
 
 [13]
 

 The language in the proposed instruction defining the State’s burden is a correct, albeit in our view incomplete, statement of the law. The United States Supreme Court held in
 
 Mullaney v. Wilbur
 
 that “the Due Process Clause requires the prosecution to prove beyond a reasonable doubt the absence of the heat of passion on sudden provocation when the issue is properly presented in a homicide case.”
 
 [14]
 
 This court has followed the
 
 Mullaney
 
 doctrine and has held, with respect to a theory of self-defense, that instructions imposing a burden of proof upon a defendant to negate an element of a charged offense are improper.
 
 [15]
 

 We conclude as a threshold matter that no such burden was imposed in this case, and Crawford’s proposed instruction was not
 
 *752
 
 specifically required by
 
 Mullaney.
 
 In this, we note that the district court correctly instructed the jury that: (1) murder is “the unlawful killing of a human being with malice aforethought, whether express or implied”; (2) “malice aforethought” is “the intentional doing of a wrongful act without legal cause or excuse or
 
 what the law considers adequate
 
 provocation” (emphasis added); (3) the provocation necessary for voluntary manslaughter consists of either “a serious and highly provoking injury inflicted upon the person killing, sufficient to excite an irresistible passion in a reasonable person, or an attempt by the person killed to commit a serious personal injury on the person killing”; (4) the defendant is “presumed innocent until the contrary is proved”; and (5) the State has ‘ ‘the burden of proving beyond a reasonable doubt every material element of the crime charged and that the Defendant is the person who committed the offense.”
 

 Under these instructions, in order to find Crawford guilty of first-degree willful, deliberate, and premeditated murder, the jury necessarily had to find that the State proved beyond a reasonable doubt that Crawford killed Dugan with malice aforethought, that is, without “what the law considers adequate provocation.” As the Ninth Circuit Court of Appeals concluded in
 
 Dunckhurst v. Deeds
 
 under strikingly similar circumstances,
 
 “Mullaney’s
 
 admonition that the State bears the burden of proving the absence of provocation, where lack of adequate provocation is an element of the crime charged, was satisfied.”
 
 [16]
 

 As the discussion above illustrates, the instructions actually provided to the jury in this case did generally and technically encompass Crawford’s proposed instruction. Therefore, the State quite legitimately argues that under this court’s holding in
 
 Stroup,
 
 the district court did not err in rejecting Crawford’s requested instruction on the ground that it was covered by the other instructions provided. We are of the view, however, that the majority holding in
 
 Stroup
 
 places undue limitations on a criminal defendant’s ability to have the jury specifically instructed on the significance of the defendant’s theory of the defense. Therefore, we have reconsidered our holding in
 
 Stroup
 
 and now expressly overrule it.
 

 In
 
 Stroup,
 
 a majority of this court held that a defendant was not entitled to a specific instruction that informed the jurors that they should acquit the defendant if they found the killing was justifiable.
 
 [17]
 
 The majority opinion concluded that the instruction proposed by the defense was unnecessary because other instructions provided to the jury sufficiently informed the jury of the defendant’s theory of the case. The other instructions provided a general, technical definition of justifiable homicide, but did not specif
 
 *753
 
 ically advise the jury that a finding of justifiable homicide gave rise to a duty to acquit.
 
 [18]
 

 The dissenting opinion in
 
 Stroup,
 
 however, concluded that the defendant had been deprived of a fair trial because none of the jury instructions actually informed the jurors of the significance of the defense theory of the case, namely, that a finding of justifiable homicide gave rise to a duty to acquit.
 
 [19]
 
 In
 
 Carter v. State,
 

 [20]
 

 an opinion that is being issued concurrently with this opinion, we have observed that this court’s jurisprudence has increasingly embraced the view advocated by the dissent in
 
 Stroup, i.e.,
 
 that district courts, upon request, must include “significance” instructions in support of the defense theory of the case. In our view, the majority opinion in
 
 Stroup
 
 cannot be read in harmony with a significant line of authority holding that jurors should receive a full explanation of the defense theory of the case.
 

 More specifically, this court has consistently recognized that specific jury instructions that remind jurors that they may not convict the defendant if proof of a particular element is lacking should be given upon request.
 
 [21]
 
 This court has also recognized that “[a] positive instruction as to the elements of the crime does not justify refusing a properly worded negatively phrased ‘position’ or ‘theory’ instruction.”
 
 [22]
 
 In
 
 Runion v. State,
 
 for example, this court approved a jury instruction stating in part:
 

 If evidence of self-defense is present, the State must prove beyond a reasonable doubt that the defendant did not act in self-defense. If you find that the State has failed to prove beyond a reasonable doubt that the defendant did not act in self-defense, you must find the defendant not guilty.
 
 [23]
 

 As noted, with respect to the State’s alternative theory of willful, deliberate, premeditated murder, the jurors in the instant case were generally instructed that the State had the burden of proving that Crawford killed Dugan with malice aforethought,
 
 i.e.,
 
 without the requisite legal provocation. Although this instruction was technically correct, the jurors were not expressly instructed that, in considering the charge of willful, deliberate, premeditated murder, the burden was on the State to prove beyond a reasonable doubt that Crawford did not act in the heat of passion induced by the req
 
 *754
 
 uisite legal provocation.
 
 [24]
 
 Even though this principle of law could be inferred from the general instructions, this court has held that the district court may not refuse a proposed instruction on the ground that the legal principle it provides may be inferred from other instructions.
 
 [25]
 
 Jurors should neither be expected to be legal experts nor make legal inferences with respect to the meaning of the law; rather, they should be provided with applicable legal principles by accurate, clear, and complete instructions specifically tailored to the facts and circumstances of the case.
 
 [26]
 

 We therefore overrule
 
 Stroup
 
 and hold that where a defense theory of voluntary manslaughter is properly at issue in a homicide case, a district court should provide upon request accurate and complete instructions setting forth the State’s burden to prove the absence of heat of passion upon sufficient provocation unless that principle of law is fully, accurately, and expressly stated in the other instructions. When some evidence in a murder prosecution implicates the crime of voluntary manslaughter, no matter how weak or incredible that evidence may be, the defendant is entitled upon request to an instruction specifically advising the jury that the burden is on the State to prove that the defendant did not act in the heat of passion with the requisite legal provocation.
 

 Incomplete aspects of the proposed instruction
 

 We emphasize, however, that we do
 
 not
 
 hold that Crawford was entitled to the verbatim “heat of passion” instruction he requested. As we explain with particularity in
 
 Carter,
 
 the conclusion that district courts must provide instructions upon request incorporating the significance of a defendant’s theory of the defense does not mean that the defendant is entitled to instructions that are misleading, inaccurate, or duplicitous.
 
 [27]
 
 Rather, where a defendant’s proposed instruction is poorly drafted, but nonetheless proposes a defense theory of the case instruction that should be given, the State may request additional, clarifying language more fully explicating the principles of law applicable to the jury’s deliberations. And in the final analysis, the district court is ultimately responsible for not
 
 *755
 
 only assuring that the substance of the defendant’s requested instruction is provided to the jury, but that the jury is otherwise fully and correctly instructed. In this, the district court may either assist the parties in crafting the required instructions or may complete the instructions sua sponte.
 
 [28]
 
 By way of example, we note that Crawford’s proposed “heat of passion” instruction invited further refinement by the State and the district court in at least two significant respects.
 

 First, Crawford’s proposed language referred only to “heat of passion” and contained no language defining the State’s burden to prove the absence of provocation involved in the crime of voluntary manslaughter. The State should have sought and the district court should have completed the requested instruction with additional, clarifying language explaining that the State has the burden of proving beyond a reasonable doubt that the defendant did not act in the heat of passion
 
 caused by the requisite legal provocation.
 

 [29]
 

 Second, Crawford’s proposed “heat of passion” instruction did not adequately define the jury’s obligations under the two alternative theories of first-degree murder alleged by the State. As we noted above, the jury was correctly instructed that as long as all of the jurors were unanimous in finding that Crawford committed first-degree murder, jury unanimity was not required as to whether that charge was established under a theory of willful, deliberate, premeditated murder or a theory of felony murder. As we also noted above, with respect to the theory of felony murder, the jury was correctly instructed that a “killing which is committed in the perpetration of a Burglary is deemed to be Murder in the First Degree, whether the killing was intentional or unintentional or accidental.”
 

 Thus, Crawford’s proposed “heat of passion” instruction had relevance only to the State’s theory of willful, deliberate, and premeditated first-degree murder and provided no explanation of the jury’s obligations with respect to the State’s alternative theory of
 
 *756
 
 first-degree felony murder. In order to accurately and fully complement the proposed instruction, the State should have requested and the district court should have included language distinguishing the jury’s obligations under these separate theories. More specifically, the State’s burden with respect to the element of malice aforethought had no application to any juror’s deliberations respecting the felony-murder theory. Similarly, a juror’s obligation to assess whether the State had met its burden of proof respecting the absence of heat of passion and legal provocation only arose if that juror found it necessary to consider whether Crawford committed a willful, deliberate, premeditated murder. Without such clarifying language, the proposed instruction was not only inaccurate, but could have potentially confused and misled any jurors who might have found Crawford guilty of felony murder into unnecessarily deliberating on issues relating to the State’s burden regarding malice aforethought, heat of passion and provocation.
 

 Harmless error
 

 Despite our conclusion that the district court erred in refusing to instruct the jury on the substance of Crawford’s proposed “heat of passion” instruction, we are convinced beyond a reasonable doubt that the jury’s verdict was not attributable to the error and that the error was harmless under the facts and circumstances of this case.
 
 [30]
 

 First, as our analysis above explains, the instructions that were actually provided to the jury correctly — albeit very generally — advised the jury that to find a willful, deliberate, premeditated murder, the jury must also necessarily find that the State proved beyond a reasonable doubt that Crawford killed Dugan with malice aforethought,
 
 i.e.,
 
 without “what the law considers adequate provocation.”
 

 Second, in our view the evidence presented in this case overwhelmingly established the absence of the legal provocation necessary to voluntary manslaughter. Specifically, the evidence established that Crawford made a considered decision to confront Dugan at her residence with a firearm. He claimed that the sudden provocation occurred when he displayed the weapon, and Dugan smirked in response. According to Crawford, Dugan’s smirk caused him to become enraged, and he killed her in the “heat of the moment.” The requisite legal provocation consists of a serious and highly provoking injury sufficient to excite an irresistible passion in a reasonable person or an attempt by the victim to inflict a
 
 *757
 
 serious personal injury on the defendant. Under these facts, we conclude that no reasonable jury could have found that the State failed to prove beyond a reasonable doubt that Crawford did not act in the heat of passion caused by the requisite legal provocation.
 

 Diminished capacity
 

 Crawford also argues that the district court erred in refusing instructions he requested implicating evidence of his diminished capacity, including that he: (1) attempted to commit suicide after shooting Dugan, as well as on several previous occasions; (2) did not remember much after firing the first shot; (3) had been on medication for depression at the time of the murder; and (4) was admitted to a hospital for psychiatric care immediately after the shooting. In support of this contention, Crawford cites to language in
 
 Finger v. State:
 

 Evidence that does not rise to the level of legal insanity may, of course, be considered in evaluating whether or not the prosecution has proven each element of an offense beyond a reasonable doubt, for example in determining whether a killing is first- or second-degree murder or manslaughter or some other argument regarding diminished capacity.
 
 [31]
 

 Based on this language, he argues that he was entitled to instructions providing guidance to the jury on how to consider the evidence he presented respecting his diminished capacity. We reject Crawford’s contention.
 

 The two rejected instructions specifically referring to “diminished capacity’ ’ would have essentially instructed the jury that it could consider the “diminished capacity of the defendant” in reaching its decision. Nevada law recognizes the M’Naghten standard and the technical defense of diminished capacity is not available in Nevada.
 
 [32]
 
 In addition, NRS 200.050 requires provocation “sufficient to excite an irresistible passion in a reasonable person.” Crawford’s proposed instructions, including the additional heat-of-passion instructions relating to the jury’s consideration of Crawford’s mental or physical frailties, were erroneous statements of Nevada law.
 
 [33]
 
 Moreover, the proposed instruction
 
 *758
 
 provided no guidance whatsoever on how the jury might properly consider evidence that did not rise to the level of legal insanity in evaluating whether the State had proven its case beyond a reasonable doubt.
 

 The cross-examination of Michael Lemon
 

 Finally, Crawford argues that the district court committed reversible error by curtailing his cross-examination of Michael Lemon, the man whom Dugan visited on the night of the murder. Crawford contends that he had the right to inquire whether Lemon was romantically involved with Dugan in order to expose his potential bias. Additionally, Crawford contends that Lemon’s testimony about his relationship with Dugan was critical to the defense because it would have supported Crawford’s heat-of-passion defense by giving credence to his belief that Dugan was involved with a third man.
 

 The district court has discretion to limit the scope of cross-examination, provided “sufficient cross-examination has been permitted to satisfy the sixth amendment.”
 
 [34]
 
 We have recognized that the district court’s discretion to curtail cross-examination is more limited if the purpose of cross-examination is to expose bias.
 
 [35]
 
 In those instances, “counsel must be permitted to elicit any facts which might color a witness’s testimony.”
 
 [36]
 

 In this case, we conclude that the district court did not abuse its discretion in curtailing the cross-examination of Lemon. Lemon testified that Dugan left his house shortly before 10 p.m.; she called him when she got home; and while they were talking on the telephone, the doorbell rang, and Dugan ended the conversation. The State offered Lemon’s testimony merely to establish the time that Crawford arrived at Dugan’s home, a fact that Crawford did not dispute. Even if Crawford had been allowed to inquire into whether Lemon and Dugan were romantically involved, evidence of a relationship between Lemon and Dugan would not have affected the jury’s perception of Lemon’s testimony. Accordingly, we conclude that Crawford was not prejudiced by the district court’s refusal to permit him to pursue on cross-examination a line of inquiry that went well beyond the scope of Lemon’s testimony on direct examination.
 

 
 *759
 

 CONCLUSION
 

 Based on the foregoing analysis, we conclude that Crawford has failed to demonstrate reversible error. Accordingly, we affirm the judgment of conviction.
 

 [1]
 

 On September 3, 2004, a panel of this court issued an opinion reversing and remanding this matter for further proceedings. Thereafter, the court entered an order withdrawing that opinion and directing appellant Crawford to respond to the State’s petition for rehearing. On July 5, 2005, this court entered an order granting the State’s petition for rehearing and submitting the appeal to the En Banc Court for decision. We now issue this opinion in place of the withdrawn opinion of September 3, 2004.
 

 [2]
 

 110 Nev. 525, 874 P.2d 769 (1994).
 

 [3]
 

 Jackson v. State,
 
 117 Nev. 116, 120, 17 P.3d 998, 1000 (2001).
 

 [4]
 

 Id.
 

 [5]
 

 See
 
 NRS 205.060(1) (providing that “[a] person who, by day or night, enters any house, room, apartment ... or other building . . . with the intent to commit . . . assault or battery on any person or any felony, is guilty of burglary”).
 

 [6]
 

 530 U.S. 466 (2000).
 

 [7]
 

 See
 
 NRS 200.030(l)(b).
 

 [8]
 

 We further note that to the extent the proposed instruction could be read to require the jury to unanimously agree on a single theory of burglary,
 
 i.e.,
 
 whether Crawford entered the residence with the specific intent to kill, or to commit assault, or to commit battery, the instruction would not comport with our holdings adopting the United States Supreme Court’s rationale in
 
 Schad
 
 v.
 
 Arizona,
 
 501 U.S. 624 (1991) (plurality opinion).
 
 See, e.g., Tabish v. State,
 
 119 Nev. 293, 313 , 72 P.3d 584, 597 (2003).
 
 Schad
 
 held that “[pjlainly there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict.” 501 U.S. at 632 (quoting
 
 McKoy v. North Carolina,
 
 494 U.S. 433, 449 (1990) (Blackmun, J., concurring)).
 

 [9]
 

 Tabish,
 
 119 Nev. at 313, 72 P.3d at 597;
 
 Moore
 
 v.
 
 State,
 
 116 Nev. 302, 304, 997 P.2d 793, 794 (2000);
 
 Walker
 
 v.
 
 State,
 
 113 Nev. 853, 870, 944 P.2d 762, 773 (1997).
 

 [10]
 

 Moore,
 
 116 Nev. at 304, 997 P.2d at 794;
 
 Walker,
 
 113 Nev. at 870, 944 P.2d at 773.
 

 [11]
 

 530 U.S. at 490.
 

 [12]
 

 Vallery
 
 v.
 
 State,
 
 118 Nev. 357, 372, 46 P.3d 66, 76-77 (2002) (internal quotation marks omitted).
 

 [13]
 

 110 Nev. 525, 874 P.2d 769 (1994).
 

 [14]
 

 421 U.S. 684, 704 (1975).
 

 [15]
 

 See St. Pierre v. State,
 
 96 Nev. 887, 890-91, 620 P.2d 1240, 1241-42 (1980);
 
 Kelso v. State,
 
 95 Nev. 37, 41, 588 P.2d 1035, 1038 (1979);
 
 see also Runion
 
 v.
 
 State,
 
 116 Nev. 1041, 1052, 13 P.3d 52, 59 (2000).
 

 [16]
 

 859 F.2d 110, 113 (9th Cir. 1988).
 

 [17]
 

 110 Nev. at 528-29, 874 P.2d at 771.
 

 [18]
 

 Id.
 

 [19]
 

 Id.
 
 at 529-30, 874 P.2d at 772 (Springer, J., dissenting).
 

 [20]
 

 121 Nev. 759, 767, 121 P.3d 592, 597 (2005).
 

 [21]
 

 See, e.g., Brooks v. State,
 
 103 Nev. 611, 747 P.2d 893 (1987);
 
 Margetts v. State,
 
 107 Nev. 616, 818 P.2d 392 (1991).
 

 [22]
 

 Brooks,
 
 103 Nev. at 614, 747 P.2d at 895.
 

 [23]
 

 116 Nev. at 1052, 13 P.3d at 59.
 

 [24]
 

 See generally Dunckhurst v. Deeds,
 
 859 F.2d 110 (9th Cir. 1988) (construing Nevada law and concluding that to obtain a first-degree murder conviction the State had to prove the absence of adequate provocation beyond a reasonable doubt).
 

 [25]
 

 See Margetts,
 
 107 Nev. at 620, 818 P.2d at 395.
 

 [26]
 

 Runion,
 
 116 Nev. at 1051, 13 P.3d at 59 (“The district courts should tailor instructions to the facts and circumstances of a case, rather than simply relying on ‘stock’ instructions.”);
 
 Culverson
 
 v.
 
 State,
 
 106 Nev. 484, 488, 797 P.2d 238, 240 (1990) (“A juror should not be expected to be a legal expert.”).
 

 [27]
 

 121 Nev. at 765, 121 P.3d at 596.
 

 [28]
 

 Id.
 

 [29]
 

 We note that in defining the element of “deliberation” necessary to the crime of willful, deliberate, premeditated murder, the jury was correctly instructed that a deliberate determination “must not be formed in passion,” and a “mere unconsidered and rash impulse is not deliberate, even though it includes the intent to kill.” Without the clarifying language, Crawford’s proposed instruction on heat of passion did not adequately distinguish between a “determination formed in passion” that could negate the element of deliberation necessary to a finding of willful, deliberate, premeditated murder and the “heat of passion upon sufficient legal provocation” that is necessary to the crime of voluntary manslaughter. A jury finding that the killing occurred as the result of a “mere unconsidered and rash impulse” might have resulted in a verdict of second-degree murder. However, a finding that the State failed to prove the absence of heat of passion “upon sufficient legal provocation” could have resulted in a verdict of voluntary manslaughter.
 

 [30]
 

 See Sullivan
 
 v.
 
 Louisiana,
 
 508 U.S. 275, 279 (1993) (holding that under
 
 Chapman
 
 v.
 
 California,
 
 386 U.S. 18 (1967), an appellate court may find some errors in instructions harmless where it is clear beyond a reasonable doubt that the guilty verdict actually rendered in the case was “surely unattributable to the error”).
 

 [31]
 

 117 Nev. 548, 577, 27 P.3d 66, 85 (2001).
 

 [32]
 

 See id.
 
 at 576, 27 P.3d at 84-85;
 
 Miller v. State,
 
 112 Nev. 168, 911 P.2d 1183 (1996) (discussing the diminished capacity defense).
 

 [33]
 

 See, e.g., Ricci v. State,
 
 91 Nev. 373, 383 n.10, 536 P.2d 79, 84 n.10 (1975);
 
 see also People
 
 v.
 
 Steele,
 
 47 P.3d 225, 241 (Cal. 2002) (rejecting the contention that the jury was required to consider the defendant’s particular mental disorders and frailties on the ground that such a requirement would “resurrect the abolished defense of diminished capacity in the guise of an expanded form of heat of passion manslaughter”).
 

 [34]
 

 Crew v. State,
 
 100 Nev. 38, 45, 675 P.2d 986, 990 (1984);
 
 see also
 
 U.S. Const. amend VI.
 

 [35]
 

 Crew,
 
 100 Nev. at 45, 675 P.2d at 991.
 

 [36]
 

 Id.