An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

IN THE SUPREME COURT OF THE STATE OF NEVADA

JASON JONES,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 63136

**FILED**

APR 25 2014

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

## ORDER OF REVERSAL AND REMAND

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of second-degree murder with the use of a deadly weapon. Eighth Judicial District Court, Clark County; Valerie Adair, Judge. Appellant Jason Jones raises six errors on appeal. We address two of his claims, one of which is dispositive.[1]

First, Jones contends that there was insufficient evidence to support his conviction. We review the evidence in the light most favorable to the prosecution and determine whether any rational juror could have found the essential elements of the crime beyond a reasonable doubt.

_____

[1]Because we are reversing and remanding for a new trial, we need not address Jones' claims of error with respect to the district court's decision to deny his motion for substitution of counsel, the district court's decision to allow a detective to testify that witnesses in the neighborhood where the shooting occurred were reluctant to cooperate with the police, the "material elements" jury instruction, and cumulative error.

SUPREME COURT
OF
NEVADA

(O) 1947A

14-13425

*Jackson v. Virginia,* 443 U.S. 307, 319 (1979); *McNair v. State,* 108 Nev. 53, 56, 825 P.2d 571, 573 (1992).

Here, evidence was presented that the victim was shot in the chest in his apartment on Father's Day. A single bullet passed through a security screen door, the right and left ventricles of the victim's heart, and lodged in the living room wall. A .380-caliber cartridge case was found outside the apartment. That night Jones' girlfriend told detectives that the victim had previously burglarized their nearby apartment and still owed Jones some money for the break-in. Three days before the murder, at 9:15 p.m., Jones texted a friend and asked, "You still got that 380 bro." A witness named Jimmie testified that the burglary occurred three days before the murder and Jones questioned all of the occupants of the apartment complex the following day to find out whether they saw anything. Jimmie saw Jones outside the victim's apartment that afternoon. Although he could not hear what Jones and the victim were saying to each other, Jones looked more excited and was throwing his arms around. A few days before the shooting, another witness, William, overheard Jones tell another occupant of the apartment complex that "someone owes me money, I'm getting my money."

On the day of the murder, the victim and his neighbor, Loretta, were drinking a 32-pack of beer and carousing in his apartment when they heard someone banging loudly on the door and window. Jimmie testified that he saw Jones knocking on the victim's door and asking him to come outside to talk with him. Loretta heard the man use her name while he was yelling at the victim and heard the number five which she believed was a reference to some denomination of money. The

victim called 911 but was too drunk to communicate when the police arrived around 9:18 p.m., and officers told him that he should file a complaint when he was sober. Jimmie told detectives that he saw Jones return to the victim's apartment a second time and continue knocking after the police left and before it got dark. Loretta passed out and was awoken by a loud bang. Although she did not remember what happened next, other witnesses testified that she ran out of the apartment yelling, "they shot him over five dollars." A call came in to dispatch at 10:38 p.m. but by the time police and medical personnel arrived, the victim was dead.

Loretta's brother William was watching television and drinking beer with his girlfriend when he heard the gunshot. He testified that he looked out the window and saw a man with short hair standing by a black car which drove off at a high rate of speed. Detective Ivie testified that, on the night of the murder, William motioned for him to come closer, looked up and down the street nervously, and told him that he saw Jones run from the apartment complex to a black Dodge Neon and drive off at a high rate of speed.

Although there were a number of credibility issues for many of the witnesses, "it is the jury's function, not that of the court, to assess the weight of the evidence and determine the credibility of witnesses." *McNair,* 108 Nev. at 56, 825 P.2d at 573. We conclude that a rational juror could infer from these circumstances that Jones committed second-degree murder with the use of a deadly weapon. *See* NRS 200.010(1); NRS 200.030(2). The jury's verdict will not be disturbed on appeal where, as here, sufficient evidence supports the conviction. *Bolden v. State,* 97 Nev. 71, 73, 624 P.2d 20, 20 (1981); *see also Rugamas v. Eighth Judicial Dist.*

*Court*, 129 Nev. ___, ___, 305 P.3d 887, 893 (2013) (explaining that, if the requirements of NRS 51.035(2)(a) are met, a statement inconsistent with declarant's testimony is "admissible as substantive evidence"); *Buchanan v. State*, 119 Nev. 201, 217, 69 P.3d 694, 705 (2003) (circumstantial evidence alone may sustain a conviction).

Second, Jones contends that the district court erred by refusing to include a jury instruction discussing voluntary manslaughter and the State's burden of proof. On the third day of trial, Jones filed a written objection to the State's proposed jury instructions, which cited binding precedent and requested the district court to include the same voluntary manslaughter instruction requested in *Crawford v. State*, 121 Nev. 744, 750, 121 P.3d 582, 586 (2005). The proposed instruction read:

> If after the consideration of all the evidence you have a reasonable doubt as to whether or not the defendant acted in a heat of passion caused by the requisite legal passion, you must return a verdict of voluntary manslaughter. This is because the State has the burden of proving beyond a reasonable doubt that the defendant did not act in the heat of passion.

The State contends that the district court did not abuse its discretion by refusing to proffer this additional instruction because it was redundant. It argues that two other instructions were sufficient to put the jury on notice of the substance of Jones' proposed instruction because those instructions informed jurors that they must return a verdict of voluntary manslaughter if they have a reasonable doubt about whether Jones committed murder and explained that a killing committed in the heat of passion will reduce homicide to voluntary manslaughter. We conclude that Jones' proposed

instruction is not redundant with these two jury instructions.[2] Even though the principle of law included in Jones' proposed instruction could be inferred by all of the instructions provided to the jury, the district court may not refuse Jones' proposed instruction on this ground. *See Crawford*, 121 Nev. at 754, 121 P.3d at 588-89 (overruling *Stroup v. State*, 110 Nev. 525, 528, 874 P.2d 769, 771 (1994), and concluding that "[j]urors should neither be expected to be legal experts nor make legal inferences with respect to the meaning of the law; rather, they should be provided with applicable legal principles by accurate, clear, and complete instructions specifically tailored to the facts and circumstances of the case"). "This court has consistently held that the defense has the right to have the jury instructed on its theory of the case as disclosed by the evidence, no matter how weak or incredible that evidence may be." *Id.* at 751, 121 P.3d at 586

---

[2]Additionally, we note that the two instructions cited by the State erroneously suggest that "[t]he crime of murder may include the crime of voluntary manslaughter" and voluntary manslaughter is not a type of homicide. The term homicide includes voluntary and involuntary manslaughter. *See* NRS 200.010 to NRS 200.260; *Alford v. State*, 111 Nev. 1409, 1412, 906 P.2d 714, 715 (1995) (discussing three categories of homicide; first-degree murder, second-degree murder, and voluntary manslaughter). The crime of murder never includes voluntary manslaughter. *See* NRS 200.010(1) (defining murder as killing "[w]ith malice aforethought, either express or implied"); NRS 200.020(2) (explaining that "[m]alice shall be implied when *no considerable provocation* appears" (emphasis added)); NRS 200.040 (defining manslaughter as killing "without malice express or implied"); *State v. Salgado*, 38 Nev. 64, 81, 150 P. 764, 765 (1915) (explaining that express malice and irresistible passion cannot coexist), *overruled on other grounds by Bryant v. State*, 72 Nev. 330, 333, 305 P.2d 360, 361 (1956).

(internal quotation marks omitted). Therefore, we conclude that the district court abused its discretion by refusing to proffer the instruction.

We consider the totality of the circumstances and the entire record to determine whether this error was harmless beyond a reasonable doubt. *See id.* at 756 n.30, 121 P.3d at 590 n.30. The entirety of the State's argument in support of harmless error is that, "[b]ased on the evidence against Appellant here, the jury would have reached the same verdict notwithstanding Appellant's redundant proffered instruction." It does not analyze the facts of this case with respect to the elements of voluntary manslaughter. In this case there were no eyewitnesses to the shooting itself. The only evidence presented was that Jones was upset about the victim burglarizing his apartment, upset that the victim had not paid Jones the money he owed, worried that he only had a hundred dollars to pay the rent for the apartment where he lived with his girlfriend and two young children, and angrily banged on the victim's door and window demanding to talk with the victim before and after the victim called the police. According to the State's interpretation of the evidence during closing arguments, Jones was angrily banging on the door for about ten minutes before the victim opened the door and Jones fired a single shot through the security door killing the victim. According to Loretta, the victim sounded upset when he spoke to the 911 operator shortly before the shooting. At the time of his death, the victim had a .321 percent blood-alcohol content. In light of the State's argument and the paucity of evidence as to "whether or not, at the time of the killing, the reason of the accused was obscured or disturbed by a passion to such an extent as would cause the ordinarily reasonable person of average disposition to act rashly

and without deliberation and reflection and from such passion rather than from judgment," *Ricci v. State*, 91 Nev. 373, 383 n.10, 536 P.2d 79, 84 n.10 (1975) (defining "heat of passion"), we conclude that the State has failed to satisfy its burden to demonstrate that the district court's failure to include Jones' proffered instruction was harmless beyond a reasonable doubt. Therefore, we

ORDER the judgment of conviction REVERSED AND REMAND this matter to the district court for proceedings consistent with this order.

_____, J.
Pickering

_____, J.          _____, J.
Parraguirre                                                   Saitta

cc:    Hon. Valerie Adair, District Judge
       Special Public Defender
       Attorney General/Carson City
       Clark County District Attorney
       Eighth District Court Clerk