# IN THE SUPREME COURT OF THE STATE OF NEVADA

CHRISTOPHER STEWART
WOODSTONE,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 74238

**FILED**

FEB 2 2 2019

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of battery resulting in substantial bodily harm. Second Judicial District Court, Washoe County; Connie J. Steinheimer, Judge.

Appellant Christopher Woodstone and his family were residing at the Volunteers of America Family Shelter when one afternoon, Woodstone and his wife got into an argument outside the shelter. As the argument escalated, staff member Gary Walters asked Woodstone to leave. Woodstone did not leave, and instead followed Walters inside, persistently questioning Walters as to why he had to leave. As Walters reached for his radio to call security, Woodstone punched him in the face, breaking Walters' jaw. At trial, Woodstone argued that he hit Walters in self-defense, stating that he believed Walters was going to hit him when Walters reached for his radio. The jury rejected Woodstone's self-defense claim and found him guilty.

*The prosecution's general accusations of tailoring do not warrant reversal here*

Woodstone first asserts that the State engaged in general accusations of tailoring when it implied that Woodstone changed his testimony after hearing all of the other witnesses testify, in violation of his constitutional right to be present at trial and confront the witnesses against him. The State denies accusing Woodstone of tailoring, contending that the

prosecutor merely asked Woodstone whether he heard the prior witnesses' testimony, and not whether he had changed his testimony accordingly. We find the State's contention that it did not engage in tailoring accusations unpersuasive.

In *Portuondo v. Agard*, the United States Supreme Court defined two categories of accusations—specific and generic. 529 U.S. 61 (2000) (distinguishing accusations supported by "specific evidence of actual fabrication," *id.* at 71, from those "tied only to the defendant's presence in the courtroom and not to his actual testimony," *id.* at 77 (Ginsburg, J., dissenting)). Here, while the State did not engage in specific accusations of tailoring, it did engage in generic accusations in its cross-examination of Woodstone and in its closing rebuttal argument. Although the *Portuondo* majority deemed such general accusations constitutionally permissible, *id.* at 71-73, we recognize the burden this prosecutorial practice imposes on a defendant's constitutionally protected right to be present at his own trial. We find this practice particularly troubling in instances where accusations are raised for the first time on rebuttal closing arguments—where a defendant has no opportunity to address the accusations and where such accusations do little to advance the truth-seeking function of trial. *See id.* at 77-78 (Ginsburg, J., dissenting).

Although Woodstone suggests that the prosecutor asked this question solely for the purpose of improperly commenting on Woodstone's Sixth Amendment rights, under these facts, we decline to address whether this court should depart from the *Portuondo* majority in the instant case because Woodstone did not object to the accusations at trial, and therefore, plain error review applies. *Mitchell v. State*, 124 Nev. 807, 817, 192 P.3d 721, 727-28 (2008) (stating that such error merits reversal only if the appellant demonstrates that the error affected his or her substantial

rights). This court recently reaffirmed that "[u]nder Nevada law, a plain error affects a defendant's substantial rights when it causes actual prejudice or a miscarriage of justice (defined as a grossly unfair outcome)." *Jeremias v. State*, 134 Nev., Adv. Op. 8, 412 P.3d 43, 49 (internal quotation marks omitted), *cert. denied*, ___ U.S. ___, 139 S. Ct. 415 (2018). Here, Woodstone argues that the prosecutor's accusations substantially affected the jury's assessment of his credibility, but, under these specific facts, we are not persuaded that credibility was central to the jury's determination of guilt. When determining whether Woodstone's aggression was self-defense, the jury had before it objective, photographic evidence of the disputed event—a surveillance video that clearly showed the events preceding the battery. Woodstone fails to demonstrate that the jury relied instead on the prosecutor's accusations of tailoring in finding him guilty. We therefore determine that neither actual prejudice nor a miscarriage of justice occurred and conclude that there was no plain error.

*Even if the prosecution improperly goaded Woodstone into accusing other witnesses of lying, this error does not constitute plain error*

In *Daniel v. State*, this court "adopt[ed] a rule prohibiting prosecutors from asking a defendant whether other witnesses have lied or from goading a defendant to accuse other witnesses of lying, except where the defendant during direct examination has directly challenged the truthfulness of those witnesses." 119 Nev. 498, 518-19, 78 P.3d 890, 904 (2003). Relying on *Daniel*, Woodstone argues that the prosecution improperly asked him whether the testimony of three other witnesses was "wrong," "incorrect," and "false" on cross-examination. We agree that this line of questioning is contrary to the intent and spirit of *Daniel*. By goading Woodstone into accusing other witnesses of lying in the absence of a direct challenge to the witnesses' truthfulness, the prosecution forced Woodstone to either accuse the witnesses of perjury, or concede that his own testimony

was false. This predicament is precisely what this court wished to avoid when it adopted the *Daniel* rule. *Daniel*, 119 Nev. at 519, 78 P.3d at 904 (relying in part on a New Mexico court decision that prohibited questions that forced a criminal defendant to characterize other witnesses' testimony as "incorrect" or "mistaken" because "such questions can constitute in effect a misleading argument to the jury that the only alternatives are that the defendant or the witnesses are liars" (internal quotation marks omitted)).

However, Woodstone again did not object at trial, thus, we review for plain error. We find that the questions do not constitute plain error because Woodstone has not shown prejudice or a miscarriage of justice. *See Jeremias*, 134 Nev., Adv. Op. 8, 412 P.3d at 49. We are unpersuaded by Woodstone's claim that this error substantially affected the jury's assessment of his credibility because we find ample other evidence on which the jury could have relied to find him guilty. Specifically, the jury saw a surveillance video that documented the altercation, heard testimony from three witnesses who declared that Woodstone had been arguing with his wife and was already angry, and learned, through the victim and the victim's physician, that the victim suffered prolonged pain after the altercation. Therefore, we conclude that while the prosecutor's questions to Woodstone were improper, Woodstone failed to demonstrate that this error warrants reversal under plain error review.

*The original aggressor jury instruction was specifically tailored such that it did not confuse the jury*

Woodstone argues that the original aggressor jury instruction given at trial was confusing and not specifically tailored to the facts and circumstances of the case. We review the district court's settling of jury instructions for an abuse of discretion or judicial error. *Crawford v. State*, 121 Nev. 744, 748, 121 P.3d 582, 585 (2005). "An abuse of discretion occurs

if the district court's decision is arbitrary or capricious or if it exceeds the bounds of law or reason." *Id.* (internal quotation marks omitted).

Before finalizing the jury instructions to include the original aggressor instruction, the district court engaged in a lengthy discussion with both parties about the propriety of the original aggressor instruction, during which the State provided a detailed response explaining how the instruction assisted with its theory of prosecution. Convinced that the instruction would assist the State's theory, and having concluded that the proposed jury instruction was an accurate recitation of the law as set forth in *Runion v. State,* 116 Nev. 1041, 1051, 13 P.3d 52, 59 (2000), the district court's decision was neither arbitrary nor capricious. We further note that Woodstone did not provide an alternative original aggressor jury instruction and that Woodstone's theory of the case was substantially covered by other instructions. Given the district court's reasoned approach to determining the propriety of this instruction, and its inclusion of other self-defense instructions that advanced Woodstone's theory of the case, we find no abuse of discretion.

*Cumulative error does not warrant reversal*

Finally, Woodstone argues that the cumulative effect of the errors warrants reversal of his conviction. Individually harmless errors may be cumulatively harmful and warrant reversal. *Valdez v. State,* 124 Nev. 1172, 1195, 196 P.3d 465, 481 (2008). "Relevant factors to consider in evaluating a claim of cumulative error are (1) whether the issue of guilt is close, (2) the quantity and character of the error, and (3) the gravity of the crime charged." *Mulder v. State,* 116 Nev. 1, 17, 992 P.2d 845, 854-55 (2000).

Here, there was strong evidence to support the jury's conclusion that Woodstone did not act in self-defense. Because the State's general

accusations of tailoring on cross-examination and during its closing rebuttal argument were constitutionally permissible, the only surviving error is the *Daniel* error. A single error cannot be cumulative and, individually, this error would not warrant reversal because Woodstone failed to show prejudice. Finally, we acknowledge that the offense in this case was serious, but note that this factor alone cannot support reversal. *Leonard v. State*, 114 Nev. 1196, 1216, 969 P.2d 288, 301 (1998) (cumulative error did not warrant reversal where sufficient evidence supported the jury's finding of guilt, even though appellant was convicted of the serious crimes of robbery and first-degree murder). We therefore

ORDER the judgment of conviction AFFIRMED

_____, C.J.
Gibbons

_____, J.          _____, J.
Pickering                                          Hardesty

_____, J.          _____, J.
Parraguirre                                      Stiglich

_____, J.          _____, J.
Cadish                                             Silver

cc:     Hon. Connie J. Steinheimer, District Judge
        Washoe County Public Defender
        Attorney General/Carson City
        Washoe County District Attorney
        Washoe District Court Clerk