*943
 
 OPINION
 

 Per Curiam:
 

 On April 13, 1993, Las Vegas Metropolitan Police Department Officer Kai Degner (“Degner”) stopped and detained respondent Michael Allan Root (“Root”) for suspicion of driving under the
 
 *944
 
 influence of alcohol. Degner testified that he gave Root a three-part field sobriety test and then asked Root to submit to a preliminary breath test. Degner testified that he gave Root three attempts to blow into the breath device, but Root responded that he did not have enough air to do so. Root testified that he blew air into the device, but that no readings were registered. Degner then transported Root to the city detention center where he read Root the Nevada “implied consent warning.” At the detention center, Root’s driver’s license was revoked. Root subsequently appealed the revocation to the Department of Motor Vehicles and Public Safety (DMV).
 

 At the hearing, Root testified that, at the detention center, Degner asked him to consent to a blood test. Root testified that he told Degner that he had an extreme fear of needles and would therefore prefer to take a breath test. Root testified that Degner “cut him off” and said, “If you don’t agree to a blood test, we’re going to revoke your license for a year.”
 

 According to Degner, Root said:
 

 [H]e was not going to refuse but he was not going to take a test. He said ... he already gave a breath test because he tried to take the preliminary breath test. I informed him that the preliminary breath test was not an evidentiary test and that he was still required by the DMV to take an evidentiary test consisting of blood or a breath test. He would not give me either, continuing to state that he already attempted to take one out in the field, the preliminary breath test.
 

 Root testified that Degner then directed him to initial a “notice of revocation [of driving privileges]” form (DLD-45). Root then placed his initials in spaces next to five separate statements on the form. Those statements notified Root that he was required to submit to a breath or blood test, that his refusal to submit would result in the revocation of his driving privileges for one year, and that if he selected the breath test he would have to provide at least two samples. The form, which is signed by Degner, indicates that Root failed to submit to an evidentiary test.
 

 Below the space for Root’s name and address, and above the spaces for initialing, the words “I have” are handwritten on the form. Root, an attorney familiar with DUI matters, contends that he was attempting to preserve a record on the form and explain that he was not refusing a breath test. Root testified that Degner prevented Root from completing his written comments.
 

 In his findings of fact, conclusions of law, and decision issued on January 14, 1995, the DMV hearing officer determined (1) that Root had failed to submit to an evidentiary chemical sobriety test, and (2) that Root’s testimony that he was not refusing to
 
 *945
 
 submit to a test was contradicted by his conduct which “spoke louder than words.” The hearing officer affirmed the revocation of Root’s driver’s license.
 

 Root appealed the hearing officer’s decision to the district court. On August 22, 1994, the district court remanded the matter to the hearing officer to specifically address the statement “I have” written on the form, Root’s testimony that he would have submitted to a breath test, and Degner’s testimony that he did not remember seeing Root write “I have” on the notice form or remember ordering Root to cease writing.
 

 On March 28, 1995, a second administrative hearing was held before the same hearing officer. Root reiterated his previous testimony. On cross-examination, Root stated that he had initialed the consent form and that Degner had warned Root that, by signing, he would lose his driving privileges. Degner indicated that he stopped Root from writing on the notice form because suspects are not permitted to write on the form, except to initial in the spaces provided.
 

 In his second written decision, the hearing officer determined that the words “I have” represented a “non-issue ... or at least a non-crucial issue” which “had no legal significance.” He found that even if Root had finished the sentence he had allegedly wanted to write, the result would not change. The hearing officer explained:
 

 [Root] had already made his statement to the [police] officer that he was not taking any tests. Merely because [Root] wanted to begin preparing his defense for the hearing or trial that would follow, by writing exculpatory remarks on the DLD-45 form, does not alter the fact that he had already refused, and failed to submit to required testing.
 

 The hearing officer again affirmed the withdrawal of Root’s driving privileges. Root appealed this decision to the district court.
 

 On September 18, 1995, the district court issued a decision and order reversing the hearing officer. The court rested its reversal on a determination that the hearing officer’s finding that the words “I have” written on the form were “meaningless” and “of no legal significance” constituted an arbitrary and capricious action. The court also noted that the DLD-45 revocation form is one-sided because it does not provide a petitioner with a safeguard against the “word of the police” nor a space where a person could “express himself.” The court stated that the lack of such safeguards may violate due process.
 

 Appellant State Department of Motor Vehicles and Public Safety (“DMV”) has timely appealed the district court’s order.
 

 
 *946
 

 DISCUSSION
 

 Root contends that the Nevada statutory scheme relating to driving under the influence (DUI) matters violates due process because (1) inadequate procedural safeguards exist to protect drivers who do not submit to chemical sobriety tests from having their licenses unjustly revoked and (2) DUI suspects are not permitted to “preserve a written record” on license revocation forms.
 

 The revocation of a driver’s license implicates a protectable property interest entitling the license holder to due process. State, Dep’t Mtr. Vehicles v. Vezeris, 102 Nev. 232, 236, 720 P.2d 1208, 1211 (1986). To determine the requirements of procedural due process,
 

 a court must balance (1) the private interest that will be affected by the official action, (2) the risk of an erroneous deprivation of that private interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards, and (3) the government’s interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.
 

 Id.
 
 at 236-37, 720 P.2d at 1211-12 (citing Matthews v. Eldridge, 424 U.S. 319, 334-35 (1976)). This court has explained that drivers have a substantial interest in retaining their driving privileges, but that the governmental interest in keeping its highways safe is also substantial and important.
 
 Vezeris,
 
 102 Nev. at 237, 720 P.2d at 1212.
 

 DUI suspects are given the opportunity to take chemical sobriety tests to determine their blood alcohol content. NRS 484.382-.385. Driving privileges are subject to summary revocation if suspects refuse to submit to required testing or if testing reveals intoxicants in the bloodstream in excess of legal limits. NRS 484.379-.386. Suspects may challenge this revocation in a hearing before the DMV. NRS 484.387. The determination of the DMV may be appealed to the district court. NRS 484.387(3). The district court’s decision may be appealed to this court. NRS 233B. 150. We conclude that the statutory protections provided to DUI suspects under Nevada law satisfy due process requirements.
 
 See generally Vezeris,
 
 102 Nev. at 236-37, 720 P.2d at 1211-12. Allowing DUI suspects like Root to write upon driver’s license revocation forms does not afford them substantial additional protection from erroneous deprivation.
 

 
 *947
 
 Root was afforded an opportunity to relate his story to a quasi-judicial officer during a full hearing on the matter. The record shows that all other required procedures were followed. Accordingly, we conclude that Root’s due process rights were not violated.
 
 [1]
 

 The DMV contends that the hearing officer’s decision is supported by substantial evidence and therefore that the district court erred by reversing that decision.
 

 “This court’s role in reviewing an administrative decision is identical to that of the district court: to review the evidence before the agency so that a determination can be made as to whether the agency decision was arbitrary, capricious, or an abuse of discretion.” Ruggles v. Public Service Comm’n, 109 Nev. 36, 40, 846 P.2d 299, 301 (1993) (citation omitted);
 
 see also
 
 NRS 233B.135(3). This court must affirm a decision by the agency that is supported by substantial evidence in the record. Mishler v. State, Bd. of Med. Examiners, 109 Nev. 287, 292, 849 P.2d 291, 294 (1993). While the courts have broad supervisory power to ensure that all relevant evidence is examined and considered by the hearing officer, the findings and ultimate decisions of those officers should not be disturbed unless clearly erroneous or otherwise arbitrary and capricious.
 
 See
 
 NRS 233B.135(3); Maxwell v. SIIS, 109 Nev. 327, 331, 849 P.2d 267, 271 (1993). The district court may not substitute its own judgment for that of the hearing officer. State, Dep’t of Motor Vehicles v. Torres, 105 Nev. 558, 561-62, 779 P.2d 959, 961 (1989).
 

 At the time of Root’s offense, NRS 484.382 provided that a DUI suspect
 

 shall be deemed to have given his consent to a preliminary test of his breath for the purpose of determining the alcoholic content of his breath when the test is administered at the direction of a police officer ... , if the officer has an articulable suspicion to believe the person to be tested was driving [while intoxicated].
 

 NRS 484.382(2)(1991)(amended 1995).
 
 [2]
 
 Failure to submit to
 
 *948
 
 such a preliminary breath test results in the revocation of the suspect’s driver’s license.
 
 Id.
 

 An initial refusal to take such a chemical sobriety test is final; the suspect cannot “cure” this refusal by making a subsequent request to take a test. Schroeder v. State, Dep’t of Motor Vehicles, 105 Nev. 179, 182, 772 P.2d 1278, 1280 (1989). Moreover, a good faith but unsuccessful effort to complete such a test is insufficient and thus constitutes a “refusal to submit” under the “implied consent” statutes. State Dep’t Mtr. Veh. v. Jenkins, 99 Nev. 460, 463, 663 P.2d 1186, 1188 (1983).
 

 Degner testified that at the time of the stop, Root stated that he wanted to perform a breath test. It appears that Root, while on the side of the highway, attempted to blow into the machine but had “insufficient breath” to do so. Root’s failure to cause a measurable reading on the breath machine constitutes a refusal to submit under the implied consent laws.
 
 See id.
 
 Consequently, Root cannot now argue that there is insubstantial evidence to revoke his license.
 
 See id.
 

 Moreover, Root’s initial refusal to consent to a preliminary breath test could not be cured by his alleged subsequent decision to submit to testing, and constituted sufficient grounds for the State to revoke his license to drive.
 
 See Schroeder,
 
 105 Nev. at 182, 772 P.2d at 1280. Further, under the version of NRS 484.383 in effect at the time of the license revocation at issue, Root’s failure to submit to an evidentiary chemical sobriety test at the city detention center also constituted a sufficient basis for revoking his driving privileges. NRS 484.383(2) (1991) (amended 1995). Given these circumstances, we conclude that the hearing officer correctly determined that the written “I have” on the revocation form had no legal significance.
 

 The record shows that, during the second hearing, the hearing officer considered all the evidence presented by Root. At both hearings, Root conveyed his version of events and testified that he wanted to write on the revocation form that he was afraid of needles and would have submitted to a breath test. The hearing officer apparently gave little weight to this testimony.
 
 See
 
 Greeson v. Barnes, 111 Nev. 1198, 1202, 900 P.2d 943, 946 (1994) (the weight and credibility of testimony is within the sole discretion of the trier of fact). The DLD-45 notice form contains Root’s initials acknowledging that he had failed to take the test, and the form states that this refusal would result in a revocation of his driver’s license.
 
 See Jenkins,
 
 99 Nev. at 463, 663 P.2d at
 
 *949
 
 1188 (failure to perform required test constitutes a “refusal to submit”). In sum, the testimonial and documentary evidence indicates that Root refused to take a proper chemical sobriety test. Accordingly, we conclude that substantial evidence supports the decision of the hearing officer.
 

 Despite the district court’s determination that the hearing officer’s decision was arbitrary and capricious, there is substantial evidence to support the administrative decision and no indication that the hearing officer made any errors of law. We conclude that the district court erred in disturbing the decision of the hearing officer, which was supported by substantial evidence.
 
 See Torres,
 
 105 Nev. at 560, 779 P.2d at 961. Accordingly, we reverse the order of the district court and reinstate the decision of the hearing officer.
 

 [1]
 

 Root also argues that the district court has final appellate jurisdiction over administrative matters. We considered and rejected this argument in the recent case of State, Dep’t Mtr. Veh. v. Bremer, 113 Nev. 805, 942 P.2d 145 (1997) (holding that the supreme court has final appellate review of agency decisions).
 

 [2]
 

 In 1995, NRS 484.382 was revised to substitute the term “reasonable grounds” for “an articulable suspicion.” 1995 Nev. Stat., ch. 546, § 2 at 1883.