HARRY ANTHONY JACKSON, Appellant, v. THE STATE OF NEVADA, Respondent.

No. 35132

February 16, 2001                    17 P.3d 998

*Morgan D. Harris,* Public Defender, and *Kedric A. Bassett* and *Lori C. Teicher,* Deputy Public Defenders, Clark County, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Stewart L. Bell,* District Attorney, and *James Tufteland,* Chief Deputy District Attorney, Clark County, for Respondent.

Before Young, Rose and Becker, JJ.

## OPINION

*Per Curiam:*

Appellant Harry Anthony Jackson ("Jackson") was convicted by a jury for the August 15, 1998, robbery of a Las Vegas area 7-Eleven convenience store. Jackson appeals, arguing the following: (1) the trial court improperly instructed the jury regarding

Jackson's intentional change of his appearance before a physical line-up; and (2) insufficient evidence supported the jury's verdict.

For the reasons discussed herein, we conclude that the district court did not abuse its discretion in submitting the change of appearance instruction to the jury. We further conclude that the jury had sufficient evidence to support its finding of Jackson's guilt.

## FACTS

William Perry ("Perry") was a 7-Eleven convenience store clerk working the graveyard shift (11 p.m. to 7 a.m.) on the morning of August 15, 1998. At approximately 5:15 a.m., Jackson entered the store and asked Perry to exchange ten pennies for two nickels. When Perry obliged Jackson's request, Jackson reached across the counter, placed his hands in the register, and attempted to prevent Perry from closing the register. A struggle between the two men ensued. Jackson pulled the register onto the floor, took the paper bills from the register, and fled the store on foot.

Several officers from the Las Vegas Metropolitan Police Department ("LVMPD") responded to Perry's activation of the store alarm and his 911 call. Officer Timothy Purney was the first officer to respond to the 7-Eleven and was responsible for taking Perry's statement.

Perry described the person who robbed him as a black male, with a goatee and a beard, approximately five feet ten inches in height and having a medium build. Perry also indicated in his statement what the individual was wearing and that he had an orange-handled pair of scissors protruding from his pocket.

Officer Purney also reviewed a video surveillance tape of the scene and broadcast a description of the suspect over his radio. Officer Purney then received a call from another patrol unit that had stopped someone matching the description a few blocks away. Officer Purney transported Perry to identify that individual. Perry informed the officers that the individual was not the person who had robbed him.

On August 18, 1998, Officer Hector Sandoval and his partner, Officer Doreen Walton, stopped a pedestrian matching the physical description of the robber four blocks from the 7-Eleven. Police identified the individual as Jackson. Officer Sandoval testified that as part of the stop, he conducted a weapons pat-down search of Jackson's person where he located a knife and a pair of orange-handled scissors. The officers took two Polaroid pictures of Jackson, confiscated the knife and the scissors, and released him. The officers then forwarded the pictures along with a memo indicating that the photos matched the physical description of the rob-

bery suspect to Detective Keith Blasko, who had been assigned to the case.

Detective Blasko compared still photos from the video surveillance camera to the Polaroids taken by Officers Sandoval and Walton. On August 25, 1998, Detective Blasko arranged a photo line-up using the Polaroids of Jackson and five other similar-looking individuals and presented them to Perry at his work. Detective Blasko testified that Perry was able to identify Jackson as the perpetrator from the photos without hesitation.

On October 5, 1998, Detective Blasko arranged a physical line-up at Jackson's request. Detective Blasko testified that when Jackson appeared for the physical line-up, he had no facial hair, unlike during his photo line-up. Detective Blasko further testified that he was reluctant to continue with the physical line-up because all the other individuals chosen to participate in the line-up had facial hair. Nevertheless, the line-up was conducted. Perry was unable to identify Jackson as the individual who had robbed him.

Officer David Summers testified that he was responsible for transporting Jackson from his cell to the physical line-up. Officer Summers further testified that while he was transporting Jackson to the line-up, Jackson began "pulling his hair in a real vigorous way" making his hairstyle go from "curly and compressed" to sticking straight up. Officer Summers also testified that he found Jackson's behavior "very peculiar" and he therefore reported the behavior to his superior and wrote about it in his report.

Perry testified that he was unable to identify Jackson at the physical line-up because his appearance was different. Perry testified that Jackson appeared taller because his hair was combed straight up. Perry made an in-court identification of Jackson at both the preliminary hearing and at trial.

Mark Washington, a crime scene analyst, testified that he was called to the scene of the robbery on the morning of August 15, 1998, to dust for fingerprints. Washington testified that he was unable to retrieve any fingerprints matching Jackson's. Washington further testified that it was not unusual that he was unable to retrieve any fingerprints from the 7-Eleven counter or cash register because their surfaces were not conducive to obtaining prints.

On August 17, 1999, the jury returned a verdict of guilty of one count each of burglary and robbery. The court sentenced Jackson to concurrent terms of 24 to 60 months and 40 to 180 months in prison.

## DISCUSSION

Jackson argues that the district court erred in giving a change of appearance instruction. Jackson further argues that the jury

should not have been allowed to infer Jackson's guilt from his alleged attempt to change his appearance immediately prior to a physical line-up because he did not know he was being taken to the line-up. Jackson also argues that the change of appearance occurred several months after the actual robbery and therefore is not indicative of a guilty conscience. The State argues that there was more than enough evidence from which the jury could infer Jackson's consciousness of guilt. We conclude that Jackson's argument lacks merit.

The district court has broad discretion to settle jury instructions and decide evidentiary issues.[1] As such, this court will review a district court's decision to give a particular instruction for an abuse of discretion or judicial error.[2] An abuse of discretion occurs if the district court's decision is arbitrary or capricious or if it exceeds the bounds of law or reason.[3]

In this case, the district court gave the following jury instruction regarding change of appearance:

INSTRUCTION NO. 17

A Defendant's intentional change of his appearance immediately after the commission of a crime or after he is accused of a crime that has been committed, is not, of course, sufficient in itself to establish his guilt, but may be considered by the jury in the light of all other evidence in the case in determining guilt or innocence.

Whether or not evidence of a change of appearance shows a consciousness of guilt and the significance to be attached to any evidence, are matters exclusively within the province of the jury.

The State submitted this instruction at trial, and Jackson made a timely objection.

Both parties rely heavily on *United States v. Perkins*, 937 F.2d 1397 (9th Cir. 1991). In *Perkins*, the United States Court of Appeals for the Ninth Circuit affirmed the conviction of the defendant bank robber in spite of an erroneous jury instruction concerning change of appearance. In reaching its decision, the court held:

---

[1]*See Greene v. State*, 113 Nev. 157, 931 P.2d 54 (1997) *receded from on other grounds by Byford v. State*, 116 Nev. 215, 994 P.2d 700 (2000).

[2]*See Howard v. State*, 102 Nev. 572, 578, 729 P.2d 1341, 1345 (1986); *see also Quillen v. State*, 112 Nev. 1369, 1381, 929 P.2d 893, 901 (1996) (stating in dicta that decisions on whether to give or decline proposed jury instructions reviewed for abuse of discretion).

[3]*See State, Dep't Mtr. Veh. v. Root*, 113 Nev. 942, 947, 944 P.2d 784, 787 (1997).

A change of appearance instruction contemplates some independent evidence indicating that the defendant himself actually changed his appearance. Thus, when a defendant is known shortly after the commission of a crime to have cut his hair, shaved off facial hair, or changed his hair color, the jury can consider this as evidence of consciousness of guilt and consider it in light of the other evidence in deciding whether the defendant is guilty.[4]

Flight instructions are valid only if there is evidence sufficient to support a chain of unbroken inferences from the defendant's behavior to the defendant's guilt of the crime charged.[5]

Jackson first argues that he was unaware that he was being taken to a physical line-up and, therefore, consciousness of guilt could not be inferred. We find that this argument lacks merit.

First, Jackson, not the State, requested the line-up. Furthermore, Detective Blasko testified that defendants are told when physical line-ups will take place and know in advance that someone will be looking at their appearance and trying to pick the defendant out of a group. Finally, we conclude that a reasonable juror could conclude from the evidence that the defendant was aware that he was being taken to a physical line-up and that is why he attempted to alter his appearance.

Jackson further argues that the change of appearance instruction was given in error because the instruction is intended to be given in instances where the individual changes his or her appearance immediately after the crime. Here, the change of appearance occurred almost two months later and thus it did not evidence a consciousness of guilt on Jackson's part. We disagree.

First, the instruction itself contemplates two instances when such an instruction is appropriate: either ''immediately after the commission of a crime'' or ''after he is accused of a crime.'' Here, Jackson changed his appearance after he was accused of the crime, was held to answer for the crime, and was taken to a line-up where Jackson hoped not to be identified as the perpetrator of the crime. Furthermore, this is not a case where the defendant changed his appearance to avoid arrest, but rather Jackson changed his appearance to avoid being identified.[6]

---

[4]*Id.* at 1403.

[5]*United States v. Feldman,* 788 F.2d 544, 555 (9th Cir. 1986).

[6]We caution the district court that jury instructions should be crafted with an eye toward the particular facts of each case and should not simply be lifted

Second, "[a]nother inference available from a change in appearance by someone who has been called to appear in a line-up is, simply, that the change reflects an awareness of guilt and fear of identification."[7] We conclude that the instruction implicitly contemplates application to cases involving changes of appearance before line-ups and in-person identifications. Therefore, the district court was well within its discretion in submitting the instruction to the jury.

Finally, Jackson argues that *Perkins* stands for the proposition that "in order to decide that the defendant changed his appearance, it is necessary to decide that the defendant is in fact the robber."[8] Viewed in context, the quotation cited by Jackson is relevant to a very specific factual inquiry present in *Perkins*, but not present in the case at bar. In *Perkins*, the Ninth Circuit concluded that the change of appearance instruction was inappropriate because the evidence merely provided support for the inference that the bank robber may have been wearing a disguise, not that defendant changed his appearance.[9]

Accordingly, we hold that the district court did not abuse its discretion in giving the change of appearance instruction.

Jackson next contends that the evidence presented at trial was insufficient to support the jury's finding of guilt. The State contends that it presented sufficient evidence to support the jury's verdict. We agree with the State.

"The standard of review for sufficiency of the evidence in a criminal case is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, after viewing the evidence in the light most favorable to the prosecution. A reviewing court will not disturb a verdict on appeal if it is supported by substantial evidence."[10]

---

from form books, other cases, and the like. Here, the part of the jury instruction referring to the defendant's attempt to change his appearance "immediately after the commission of [the] crime" was not relevant to the facts of this case; and as such, it was superfluous. For the purpose of clarity, and in the aid of judicial economy, we would caution the district court to carefully tailor future instructions to the unique facts of the case and to avoid unnecessary language.

[7]*United States v. McKinley*, 485 F.2d 1059, 1061 (D.C. Cir. 1973); *see also District of Columbia v. M.M.*, 407 A.2d 698, 700 (D.C. 1979) (robbery suspects who switched their jackets while being driven in a police car to a showup "thereby evidencing guilt").

[8]*Perkins*, 937 F.2d at 1403.

[9]*Id*. In *Perkins*, the court ultimately concluded that the change of appearance instruction was not appropriate, but that it amounted to harmless error.

[10]*Domingues v. State*, 112 Nev. 683, 693, 917 P.2d 1364, 1371 (1996) (citations omitted); *see also Cunningham v. State*, 94 Nev. 128, 130, 575 P.2d 936, 937 (1978).

Specifically, Jackson argues the following: (1) Jackson was found with orange-handled scissors three days after the 7-Eleven robbery, (2) Perry did not identify him at the physical line-up, (3) Jackson had only nine cents on his person when arrested approximately two months after the robbery, and (4) Perry's photo identification was weak. We conclude that Jackson's arguments are without merit.

The jury could reasonably infer from the evidence presented that Jackson was guilty of the burglary and robbery for which he was convicted. Moreover, "it is the jury's function, not that of the court, to assess the weight of the evidence and determine the credibility of witnesses."[11]

First, implicit within Jackson's argument is that the change of appearance instruction should not have been given. This argument has been addressed above. We conclude that the jury could have relied entirely upon Perry's testimony and disregarded the disputed instruction. Perry testified that he was able to identify Jackson from a photo line-up, at a preliminary hearing, and at the actual trial. Moreover, the jury viewed the entire incident on a surveillance video and could judge for themselves whether Jackson was the perpetrator or not.

Jackson also argues that the orange-handled scissors are insufficient evidence to warrant a conviction. Standing alone, certainly this evidence would be insufficient; however, Jackson's argument ignores the other evidence the jury was able to consider, including: (1) the videotape showing the robber with orange-handled scissors, (2) the close proximity in which Jackson was stopped and the scissors were confiscated relative to the 7-Eleven that had been robbed (only four blocks from the 7-Eleven), and (3) Perry's repeated identifications of Jackson as the perpetrator.

Jackson further argues Perry's inability to identify him at the physical line-up proves the jury lacked sufficient evidence upon which to convict. Again, Jackson's argument ignores the fact that Perry did identify him on several occasions. Moreover, the jury could have reasonably concluded that Perry's inability to identify Jackson at the physical line-up was due to Jackson's intentional attempt to change his appearance immediately prior to the line-up.

Finally, Jackson argues that he had only nine cents on his person when he was arrested approximately two months later. This

---

[11]*McNair v. State,* 108 Nev. 53, 56, 825 P.2d 571, 573 (1992); *see also Lay v. State,* 110 Nev. 1189, 1192, 886 P.2d 448, 450 (1994) ("[I]t is exclusively within the province of the trier of fact to weigh evidence and pass on the credibility of witnesses and their testimony.").

argument is not plausible. While Jackson was not arrested with the fruits of the robbery on his person, the jury nevertheless could have reasonably concluded that he spent the proceeds of the robbery or had deposited them in the bank.

After a careful review, we conclude that a jury could reasonably infer from the evidence presented that Jackson was guilty of the offenses for which he was convicted and those findings will not be disturbed on appeal.

## CONCLUSION

For the foregoing reasons, we conclude that the district court did not abuse its discretion in submitting the change of appearance instruction to the jury. We further conclude that the jury had sufficient evidence to support its finding of Jackson's guilt. Accordingly, we affirm Jackson's judgment of conviction.