**130 Nev., Advance Opinion 16**

# IN THE SUPREME COURT OF THE STATE OF NEVADA

KEONIS DAVIS,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 57208

**FILED**

MAR 27 2014

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a judgment of conviction, pursuant to a jury verdict, of battery with the use of a deadly weapon resulting in substantial bodily harm. Eighth Judicial District Court, Clark County; Valerie Adair, Judge.

*Reversed and remanded.*

Legal Resource Group, LLC, and T. Augustus Claus, Henderson, for Appellant.

Catherine Cortez Masto, Attorney General, Carson City; Steven B. Wolfson, District Attorney, Steven S. Owens, Chief Deputy District Attorney, and Agnes Lexis, Deputy District Attorney, Clark County, for Respondent.

---

BEFORE GIBBONS, C.J., DOUGLAS and SAITTA, JJ.

## OPINION

By the Court, GIBBONS, C.J.:

In this opinion, we address justifiable battery and the exercise of self-defense that results in the infliction of bodily harm but not death. Appellant Keonis Davis shot Damien Rhodes in the chest during an altercation. Rhodes survived, and the State charged Davis with one count of attempted murder with use of a deadly weapon and one count of battery with use of a deadly weapon. At trial, the district court denied two of

14-09677

Davis' proposed instructions on justifiable battery, which were both based on a theory of self-defense. The jury found Davis guilty of battery with use of a deadly weapon resulting in substantial bodily harm. Davis now appeals, arguing that the district court erred in denying his proposed instructions regarding self-defense that were accurate statements of Nevada law. We agree, and because the error was not harmless, we reverse Davis' conviction and remand this case to the district court for a new trial.

## FACTS AND PROCEDURAL HISTORY

Davis and Rhodes had been close friends, but that friendship deteriorated after Rhodes "took" a gun charge for Davis, incurring a significant fine. Police found the gun during a traffic stop of a vehicle driven by Rhodes. Davis was riding in the backseat and had possession of the gun when the vehicle was stopped, but he passed the gun to another passenger who put it in the front dash. The police arrested Rhodes and the other passenger in connection with the gun; Davis was not arrested. Rhodes subsequently negotiated a plea deal that resulted in four days in jail and a $2,000 fine. After serving the jail time, Rhodes encountered Davis and asked him to reimburse him for the $2,000 fine. However, Davis responded that he did not have the money. As a result, Davis stated that Rhodes challenged him to a fistfight, but it was broken up before any physical altercation occurred. Davis heard from other individuals that Rhodes wanted to physically harm him. He knew that Rhodes had a short temper because he previously witnessed Rhodes violently beat another person. Davis also knew that Rhodes carried a gun and previously witnessed Rhodes shoot at another person.

About five months later, Davis was at the Rancho Mesa Apartments when he encountered Rhodes again. Davis and Rhodes have

different versions of the encounter. According to Davis, he tried to shake Rhodes' hand, but Rhodes refused and asked Davis where the $2,000 was. When Davis responded that he did not have the money, Rhodes attempted to instigate a fight. Davis informed Rhodes that he was armed and did not want to fight. Rhodes implied that he had a gun as well. Davis tried to walk away, but Rhodes ran after him and swung his fist at Davis, clipping the side of his head. Davis pushed Rhodes away to get some space. Rhodes again attempted to attack Davis. Davis started backing up while pulling his gun out. Davis tried to pull the slide of the handgun to chamber the round, but the gun jammed. Rhodes did not retreat. Davis tried to unjam the gun, but it fired and the bullet struck Rhodes in the chest. Davis fled the scene.

Rhodes admitted that he instigated the verbal argument with Davis but claimed that Davis initiated the physical altercation when he shot Rhodes in the chest. While on the ground, Rhodes claimed he heard a loud and clear "click click" noise. Two other witnesses also testified regarding the shooting, one whose story corresponded with Davis' account and the other whose story mirrored Rhodes' version. The latter testified that he saw Davis stand over Rhodes after shooting him and attempt to pull the trigger two more times, but the gun jammed. Police recovered two unspent .22 cartridges and one .22 cartridge case from the scene. However, based on the evidence available, the State's firearms expert could not discern whether the gun jammed before or after the single bullet was successfully fired. Rhodes survived the shooting.

During his six-day jury trial, Davis proposed two jury instructions regarding justifiable infliction of bodily harm. The district court recognized that Davis was entitled to self-defense instructions but rejected his proposed instructions as confusing. Although the district

SUPREME COURT
OF
NEVADA

(O) 1947A

court acknowledged that the proposed instructions mirrored Nevada's self-defense statutory language nearly verbatim, it concluded that the statutes did not accurately reflect Nevada law. Therefore, the district court only provided the instructions this court set forth in *Runion*.[1] The jury found

---

[1]The district court provided instructions that were almost verbatim from *Runion v. State*, 116 Nev. 1041, 1051-52, 13 P.3d 52, 59 (2000). These instructions expressly addressed murder and attempted murder.

Jury Instruction No. 14 read:

> The killing or attempted killing of another person in self-defense is justified and not unlawful when the person who kills or attempts to kill actually and reasonably believes:
>
> 1[.] That there is imminent danger that the assailant will either kill him or cause him great bodily injury; and
>
> 2[.] That it is absolutely necessary under the circumstances for him to use, in self-defense, force or means that might cause the death of the other person, for the purpose of avoiding death or great bodily injury to himself.
>
> A bare fear of death or great bodily injury is not sufficient to justify a killing or attempted killing. To justify the taking of a life of another in self-defense, the circumstances must be sufficient to excite the fears of a reasonable person placed in a similar situation. The person killing or attempting to kill must act under the influence of those fears alone and not in revenge.

Jury Instruction No. 15 read:

> Actual danger is not necessary to justify a killing or attempted killing in self[-]defense. A person has a right to defend from apparent danger to the same extent as he would from actual danger. The person killing or attempting killing is justified if:

*continued on next page...*

 

Davis guilty of battery with use of a deadly weapon resulting in substantial bodily harm. Davis now appeals.

## DISCUSSION

*The district court erred in refusing to give Davis' proposed justifiable battery instructions*

Davis contends that the district court committed reversible error by rejecting his proposed instructions on justifiable infliction of bodily harm because they were accurate statements of law and supported his theory of defense. The State argues that the district court properly denied Davis' proposed instructions because (1) there was no evidence to support a self-defense instruction, (2) the instructions misstated the law

---

*...continued*

> 1. He is confronted by the appearance of imminent danger which arouses in his mind an honest belief and fear that he is about to be killed or suffer great bodily injury; and
>
> 2. He acts solely upon these appearances and his fear and actual beliefs; and
>
> 3. A reasonable person in a similar situation would believe himself to be in like danger.
>
> The killing or attempted killing is justified even if it develops afterward that the person killing or attempted killing was mistaken about the danger.

Jury Instruction No. 16 read:

> If evidence of self-defense is present, the State must prove beyond a reasonable doubt that the defendant did not act in self-defense. If you find that the State has failed to prove beyond a reasonable doubt that the defendant did not act in self-defense, you must find the defendant not guilty.

because deadly force cannot be used in circumstances where no threat of a felony involving substantial bodily harm or death exists, and (3) Davis' theory of self-defense was substantially covered by the given instructions. We agree with Davis.

"The district court has broad discretion to settle jury instructions." *Crawford v. State*, 121 Nev. 744, 748, 121 P.3d 582, 585 (2005). We review a district court's denial of proposed jury instructions for abuse of discretion or judicial error. *Id.* "An abuse of discretion occurs if the district court's decision is arbitrary or capricious or if it exceeds the bounds of law or reason." *Jackson v. State*, 117 Nev. 116, 120, 17 P.3d 998, 1000 (2001). However, we review whether an instruction was an accurate statement of law de novo. *Funderburk v. State*, 125 Nev. 260, 263, 212 P.3d 337, 339 (2009).

*Davis presented evidence of self-defense*

The State argues that Davis was not entitled to self-defense instructions because there was no competent evidence of self-defense. We disagree.

Death does not have to be the result for self-defense to be applicable. *See Rosas v. State*, 122 Nev. 1258, 1262, 147 P.3d 1101, 1104 (2006) (concluding that the district court erred in rejecting a jury instruction on self-defense for defendant charged with battery upon a police officer); *Barone v. State*, 109 Nev. 778, 779-81, 858 P.2d 27, 28-29 (1993) (district court committed reversible error by not instructing on the burden of proof for self-defense when defendant was charged with battery with a deadly weapon). Specifically, NRS 200.275 contemplates self-defense applying in contexts outside of homicide, as it unambiguously provides that "[i]n addition to any other circumstances recognized as justification at common law, the infliction or threat of bodily injury is

justifiable, and *does not constitute* mayhem, *battery* or assault, if done under circumstances which would justify homicide" (emphases added); *see also* NRS 193.230 ("Lawful resistance to the commission of a public offense may be made . . . [b]y the party about to be injured."); NRS 193.240 ("Resistance sufficient to prevent the offense may be made by the party about to be injured . . . [t]o prevent an offense against his or her person . . . ."). These provisions ensure that persons who stop short of killing in self-defense are afforded the same defenses as those who actually kill their assailants.

A defendant "has the right to have the jury instructed on [his or her] theory of the case as disclosed by the evidence, no matter how weak or incredible that evidence may be." *Crawford*, 121 Nev. at 751, 121 P.3d at 586 (internal quotations omitted); *see Harris v. State*, 106 Nev. 667, 670, 799 P.2d 1104, 1105-06 (1990) (concluding that the district court erred by refusing to approve a self-defense instruction when the defendant testified that the victim attacked and attempted to rob him); *Mirin v. State*, 93 Nev. 57, 59, 560 P.2d 145, 146 (1977) (concluding that the district court did not err by refusing to approve a self-defense instruction when the defendant was the established pursuer and aggressor).

Davis' theory of the case was that he was afraid that Rhodes was going to shoot him or beat him to death and he shot Rhodes to protect himself. During trial, Davis testified that: (1) he had previously witnessed Rhodes violently punch and kick another person until police arrived, (2) Rhodes previously challenged Davis to a fistfight, (3) Davis heard from others that Rhodes wanted to kill him, (4) Davis knew that Rhodes carried a gun, (5) Rhodes started the argument, (6) Rhodes implied he was carrying a gun the day of the shooting, (7) Rhodes instigated the fight with Davis even though Davis informed him that he was armed and tried to

walk away, and (8) Rhodes punched Davis in the head. Davis also opined that "[f]ist fights kill people too." Davis' testimony supported his self-defense theory that he reasonably believed that he was in imminent danger from Rhodes and that the use of force was necessary under the circumstances to avoid death or great bodily injury to himself. *See Runion*, 116 Nev. at 1051, 13 P.3d at 59. Based on this evidence, we conclude that Davis was entitled to self-defense instructions. *See Williams v. State*, 99 Nev. 530, 531, 665 P.2d 260, 261 (1983) ("[e]vidence from the defendant alone need not be supported by other independent evidence" to entitle him to jury instructions regarding his theory of the case).

While the State asserts that Davis was not allowed to claim self-defense because Rhodes' conduct did not amount to a felony, we conclude that this argument lacks merit for two reasons. First, a person is allowed to use "[r]esistance sufficient . . . [t]o prevent an offense against his or her person," and, if the resistance is homicide, it is justifiable if "the circumstances were sufficient to excite the fears of a reasonable person." NRS 193.240; NRS 200.130. Second, whether Davis reasonably believed he was in fear of death or great bodily harm, or whether he was defending against an attempt by Rhodes to commit a felony, was a question of fact for the jury.

*Davis' proposed jury instructions did not misstate Nevada law*

The district court recognized Davis' entitlement to self-defense instructions, but provided the instructions from our opinion in *Runion*.[2]

---

[2]We specifically required in *Runion* that "[t]he district courts should tailor instructions to the facts and circumstances of a case, rather than simply relying on 'stock' instructions." 116 Nev. at 1051, 13 P.3d at 59. We did not intend the instructions set forth in *Runion* to become "stock"

*continued on next page...*

The *Runion* case put the issue of self-defense for attempted murder in front of the jury. But here, attempted murder and battery were both before the jury. The district court denied two proposed defense instructions that would have put the specific issue of justifiable battery in front of the jury. Davis' first proposed instruction read:

> The infliction of bodily injury or the threat of bodily injury is justifiable, and does not constitute a public offense, if done under circumstances which would justify homicide.

The second proposed instruction read:

> Justifiable homicide is the killing of a human being in necessary self-defense, or in defense of habitation, property or person, against an individual who manifestly inten[d]s, or endeavors, by violence or surprise, to commit a felony.

Homicide is also justifiable when committed:

> — In the lawful defense of the slayer or of any other person in his presence or company, when there is reasonable ground to apprehend a design on the part of the person slain to commit a felony or to do some great personal injury to the slayer or to any such person, and there is imminent danger of such design being accomplished[;]

> — In the actual resistance of an attempt to commit a felony upon the slayer[; or]

---

*...continued*

instructions, but provided them as samples only. *Id.* Thus, when bodily injury (and not death) is the resulting harm to the victim, or when battery (and not killing) is the intended action by the defendant, the sample instructions should be reworded to account for those factual changes.

— In all other instances which stan[d] upon the same footing of reason and justice as those enumerated above.

The district court rejected these instructions following an extensive discussion regarding the language in the second instruction dealing with a defendant's "reasonable ground to apprehend a design on the part of the person slain to commit a felony or to do some great personal injury." Engaging in a hypothetical discussion beyond the facts of Davis' case, the district court struggled with the broad "commit a felony" language and whether someone could shoot a person who is attempting to commit, for example, felony larceny. The district court ultimately concluded that while the proposed instructions were consistent with Nevada's justifiable homicide statutes, the statutes were overbroad and did not reflect the true state of the law because deadly force is not justifiable when exercised to prevent nonviolent felonies. As a result, the district court refused to give Davis' requested instructions.

The State argues that the district court properly rejected Davis' proposed instructions because deadly force cannot be used in response to all felonies, particularly in circumstances where no threat of a felony involving substantial bodily harm or death exists. We note that the two proposed instructions are near verbatim copies of NRS 200.120(1),[3]

_____

[3]NRS 200.120(1) states, in pertinent part:

> 1. Justifiable homicide is the killing of a human being in necessary self-defense, or in defense of habitation, property or person, against one who manifestly intends or endeavors, by violence or surprise, to commit a felony . . . .

NRS 200.150,[4] NRS 200.160,[5] and NRS 200.275.[6] The plain language of these statutes does not differentiate between the types of felonies from which a person may defend himself.

However, regardless of the statutes' language, this case does not present the question of whether battery is justifiable when used to defend against a nonviolent felony, and the district court's reliance on the proposed hypothetical was outside the facts of this case. This case did not involve a nonviolent felony such as larceny; Davis anticipated that Rhodes was going to violently attack him, causing him bodily injury or death if he

---

[4]NRS 200.150 reads:

> All other instances which stand upon the same footing of reason and justice as those enumerated shall be considered justifiable or excusable homicide.

[5]NRS 200.160 reads, in pertinent part:

> Homicide is also justifiable when committed:
>
> 1. In the lawful defense of the slayer ... when there is reasonable ground to apprehend a design on the part of the person slain to commit a felony or to do some great personal injury to the slayer ... and there is imminent danger of such design being accomplished; or
>
> 2. In the actual resistance of an attempt to commit a felony upon the slayer . . . .

[6]NRS 200.275 reads:

> In addition to any other circumstances recognized as justification at common law, the infliction or threat of bodily injury is justifiable, and does not constitute mayhem, battery or assault, if done under circumstances which would justify homicide.

SUPREME COURT
OF
NEVADA

(O) 1947A

11

did not act. Thus, under Davis' theory of the case, the second proposed instruction allowed the jury to find that Davis defended himself against Rhodes, "who manifestly inten[ded], or endeavor[ed], by violence or surprise, to commit a felony" or against the imminent threat of "some great personal injury."

We note that, to assuage its concerns that the unqualified reference to "commit a felony" in the second proposed instruction might confuse the jury, the district court could have omitted the "commit a felony" language in the second part of the second instruction. *See Runion*, 116 Nev. at 1050-51, 13 P.3d at 58 (allowing district courts to depart from repeating the exact statutory language in a jury instruction and instead encouraging the alteration of words to tailor the instruction to the facts of the case). Such an instruction would have allowed the jury to consider justifiable battery by determining (1) whether Rhodes' actions constituted an intent, by surprise or violence, to commit a felony; and (2) whether "there [was] reasonable ground to apprehend a design on the part of [Rhodes] . . . to do some great personal injury to [Davis]." *See Crawford*, 121 Nev. at 754-55, 121 P.3d at 589 ("[T]he district court is ultimately responsible for not only assuring that the substance of the defendant's requested instruction is provided to the jury, but that the jury is otherwise fully and correctly instructed. In this, the district court may either assist the parties in crafting the required instructions or may complete the instructions sua sponte.").

Davis' interpretation was legally correct and in accord with current statutes; justifiable battery is the battery of a human being, which does not result in death and is necessary for self-defense against one who manifestly intends to commit a felony by using violence or surprise, or

SUPREME COURT
OF
NEVADA

(O) 1947A

12

when there is reasonable ground to apprehend a design on the part of the person injured to do some great personal injury to the person inflicting the injury. NRS 200.120; NRS 200.275.

*Davis' justifiable battery theory was not substantially covered by other instructions*

"[T]he district court may refuse a jury instruction on the defendant's theory of the case which is substantially covered by other instructions." *Runion*, 116 Nev. at 1050, 13 P.3d at 58.

The State argues that the language in the jury instructions regarding "attempted killing" included the conduct that formed the basis for the battery charge and thus Davis did not need a separate self-defense instruction focusing on battery. The State contends that the factual basis of the attempted murder charge was that Davis unlawfully attempted to shoot Rhodes more than once, which was also the basis for the battery charge.

But the State's argument ignores the language in the information. Davis' alleged attempt to shoot Rhodes more than once was indeed the basis of the attempted murder charge. However, the State pleaded the battery charge as arising when Davis fired the gun at Rhodes and struck him in the chest. If the jury believed that Davis meant to shoot Rhodes in self-defense, but not kill him, then the *Runion* instructions were insufficient because they do not address justifiable battery, only justifiable killing or attempted killing. The first proposed instruction would have notified the jury that infliction of bodily injury in self-defense does not constitute a battery. *See Williams*, 99 Nev. at 531, 665 P.2d at 261. The second proposed instruction would have clarified the circumstances that constitute justifiable homicide in connection with the first instruction,

which states that battery is justified "if done under circumstances which would justify homicide." Therefore, Davis' proposed instructions were not duplicative of those given by the district court and included unique concepts that should have been considered by the jury.

*The district court's rejection of Davis' proposed jury instructions was not harmless and constitutes reversible error*

"'[T]rial error[s]' are subject to harmless-error review because these errors 'may . . . be quantitatively assessed in the context of other evidence presented in order to determine whether [they were] harmless beyond a reasonable doubt.'" *Patterson v. State*, 129 Nev. ___, ___, 298 P.3d 433, 439 (2013) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 307-08 (1991)). An error is harmless if this court determines beyond a reasonable doubt that the error did not contribute to the defendant's conviction. *Hernandez v. State*, 124 Nev. 639, 653, 188 P.3d 1126, 1136 (2008).

As discussed above, the district court's rejection of Davis' proposed jury instructions was not harmless because we cannot conclude beyond a reasonable doubt that the district court's rejection of these instructions did not contribute, at least partially, to Davis' conviction. The proposed instructions would have informed the jury about justifiable battery because the approved self-defense instructions only referenced "killing" and "attempted killing." Additionally, it is not clear whether the jury reached its verdict because (1) the jurors found that Davis acted in self-defense on the attempted murder charge because that was the only crime for which they were provided self-defense instructions; or (2) the jurors rejected Davis' self-defense theory regarding battery, but found he lacked the specific intent to kill necessary for the attempted murder charge. Therefore, we conclude that the district court's error was not

harmless and thus reversible.[7] *Williams*, 99 Nev. at 531, 665 P.2d at 261 ("If a defense theory of the case is supported by some evidence which, if believed, would support a corresponding jury verdict, failure to instruct on that theory totally removes it from the jury's consideration and constitutes reversible error.").

## CONCLUSION

NRS 200.275 unequivocally provides that battery is justifiable in self-defense under the same conditions that would justify homicide. By refusing to provide an instruction to that effect, we conclude that the district court committed reversible error. Accordingly, we reverse Davis' conviction for battery with a deadly weapon causing substantial bodily harm and remand this case to the district court for a new trial.[8]

_____, C.J.
Gibbons

We concur:

_____, J.
Douglas

_____, J.
Saitta

---

[7]In future cases involving justifiable-battery defenses, we strongly encourage a separate instruction that notifies the jury of the concepts set forth in NRS 200.120(1), NRS 200.150, NRS 200.160, and NRS 200.275.

[8]We have considered the parties' remaining arguments, including the State's argument that Davis was not entitled to self-defense instructions at all and that the jury must have found by its verdict that Davis was acting with cold-blooded intent to kill, and conclude they are without merit.

SUPREME COURT
OF
NEVADA

(O) 1947A