An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

IN THE SUPREME COURT OF THE STATE OF NEVADA

THE STATE OF NEVADA,
Appellant,
vs.
MARINO SCAFIDI,
Respondent.

No. 66031

FILED

JAN 1 5 2015

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY _____
DEPUTY CLERK

## ORDER OF REVERSAL AND REMAND

This is an appeal from an order of the district court granting several pretrial motions to dismiss an information. Eighth Judicial District Court, Clark County; Michael Villani, Judge.

Respondent Marino Scafidi was charged by information with one count of sexual assault. He then filed three motions in the district court to dismiss the information on the grounds that he was unduly prejudiced by the State's destruction of three pieces of exculpatory evidence. The district court granted Scafidi's motions after holding an evidentiary hearing, finding that the State destroyed exculpatory evidence and concluding that the cumulative effect of the lost evidence resulted in undue prejudice to Scafidi that could not be cured by jury instructions. The State appeals the district court's order granting the motions to dismiss.

A defendant can establish a due process violation resulting from the State's loss or destruction of evidence by demonstrating either bad faith on the part of the State or that the loss unduly prejudiced his case. *State v. Hall*, 105 Nev. 7, 9, 768 P.2d 349, 350 (1989). The district court did not address whether Scafidi demonstrated bad faith, and Scafidi

SUPREME COURT
OF
NEVADA

(O) 1947A

15-01722

does not challenge this omission on appeal. To demonstrate undue prejudice, a defendant must show "that it could be reasonably anticipated that the evidence sought would be exculpatory and material to [his] defense" and that when evaluated in the context of the entire record, the lost evidence creates a reasonable doubt that was not otherwise present. *Sparks v. State*, 104 Nev. 316, 319, 759 P.2d 180, 182 (1988) (quoting *Boggs v. State*, 95 Nev. 911, 913, 604 P.2d 107, 108 (1979)). This court reviews a district court's dismissal of a charging document for an abuse of discretion. *Hill v. State*, 124 Nev. 546, 550, 188 P.3d 51, 54 (2008). "An abuse of discretion occurs if the district court's decision is arbitrary or capricious or if it exceeds the bounds of law or reason." *Nunnery v. State*, 127 Nev. ___, ___, 263 P.3d 235, 247 (2011) (quoting *Jackson v. State*, 117 Nev. 116, 120, 17 P.3d 998, 1000 (2001)).

After a sexual encounter with Scafidi, the alleged victim, S. Carter, locked herself in Scafidi's hotel bathroom and dialed 911, explaining that she feared Scafidi would hurt her but not alleging sexual assault. After responding to the call, police escorted S. Carter to the hospital for a sexual-assault examination and to interview her. During her hospital interviews with Detective Pool, S. Carter indicated she had been using her phone to text one or more friends shortly before the alleged sexual assault. S. Carter's phone had been seized from the hotel room while she was at the hospital and was returned to her that afternoon by Detective Pool without his first reviewing or recording the text messages. The messages were deleted sometime prior to the preliminary hearing and are now irretrievable. S. Carter told Detective Pool that she took Wellbutrin, and she gave blood and urine samples to be tested for alcohol and a variety of illicit drugs, including "roofies," as part of the hospital's

sexual-assault examination. Soon after his arrest, a blood sample was taken from Scafidi in order to test him for sexually transmitted diseases pursuant to NRS 441A.320(1).

In his motion to dismiss filed on April 11, 2014, Scafidi claimed that he was unduly prejudiced by the State's failure to preserve S. Carter's blood and urine samples taken by the hospital as part of her sexual-assault examination. The district court found that the samples, which revealed a blood alcohol content of 0.173 and tested negative for illicit drugs, were not tested for Wellbutrin and were destroyed in the hospital's ordinary course of business before the defense was able to have them independently tested. The district court also found that officers were aware that S. Carter was taking Wellbutrin, whose possible side effects include delusions and paranoia, and that she believed she had been drugged. Finally, the district court found that S. Carter's blood alcohol content was inconsistent with her statements that she consumed only four drinks over the course of the evening.

Evidence that merely impeaches a witness but does not tend to establish innocence is not exculpatory. *Orfield v. State*, 105 Nev. 107, 110, 771 P.2d 148, 150 (1989). Although the testing Scafidi sought may have helped his defense, it would not have established his innocence but, at best, would reveal evidence that could be used to impeach S. Carter. Accordingly, S. Carter's biological samples were not exculpatory. Further, a defendant is not unduly prejudiced by the destruction of a biological sample where the test is considered to be generally reliable, regulations ensure proper maintenance of equipment, and there are alternative means to impeach the reliability of the tests. *Hall*, 105 Nev. at 9-10, 768 P.2d at 350-51. Scafidi did not allege facts that would implicate the first two

factors, and as in *Hall*, Scafidi has other means of impeaching the accuracy of the blood tests that were performed. Scafidi also failed to present any evidence indicating a correlation between the possible levels of Wellbutrin in S. Carter's blood and potential side effects, either with or without the consumption of alcohol. Scafidi thus failed to demonstrate that S. Carter's Wellbutrin levels would have created a reasonable doubt that did not otherwise exist. *See Sparks*, 104 Nev. at 319, 759 P.2d at 182. We therefore conclude that the district court abused its discretion in granting the motion.

In his motion to dismiss filed on May 15, 2014, Scafidi claimed that he was unduly prejudiced by the State's failure to preserve his blood sample. The district court found that Scafidi's blood was drawn and placed into evidence. The district court also found that Scafidi told police that "roofies" were involved; alcohol exaggerates the drug's effects, which include impaired judgment, loss of inhibition, confusion, and memory impairment; and that the presence of alcohol or drugs in Scafidi's blood would have implicated his state of mind.

The record does not support the district court's finding that Scafidi's blood was collected as, or placed into, evidence. Rather, Scafidi's blood was drawn pursuant to NRS 441A.320(1) to screen for sexually transmitted diseases. Accordingly, Scafidi's sample was not evidence in the possession of the State. Further, "[i]t is not sufficient that the showing disclose merely a hoped-for conclusion from examination of the destroyed evidence." *Boggs*, 95 Nev. at 913, 604 P.2d at 108. And Scafidi's motion described merely a hoped-for conclusion that testing of his blood would reveal a "plausible" plot by S. Carter to gain financially from falsely

accusing him of sexual assault. We therefore conclude that the district court abused its discretion in granting the motion.

Finally, in his motion to dismiss filed on November 22, 2013, Scafidi argued that he was unduly prejudiced by Detective Pool's failure to preserve S. Carter's text messages because they were foreseeably exculpatory. The district court found that Detective Pool knew of the text messaging and seized S. Carter's phone, and that the messages were relevant to the issue of whether S. Carter did or could have consented to Scafidi's actions.

The record supports the district court's findings that the evidence was foreseeably exculpatory. Detective Pool acknowledged at the evidentiary hearing the importance of the element of consent in sexual-assault cases in general and testified that S. Carter's text messages, including their coherence, could be indicative of whether she consented to the sexual encounter with Scafidi. S. Carter never said why she felt afraid of Scafidi but that she "willingly" went with him to his hotel room. Detective Pool also testified that S. Carter reported telling Scafidi, "No," but always in a joking or laughing manner and that in his initial interview with her, she did not allege any facts that would constitute a crime. Looking at the entire record, there was sufficient evidence of consent and thus reason to preserve evidence of S. Carter's state of mind that the district court's finding of foreseeable exculpability was not arbitrary or capricious.

However, we cannot determine whether the district court abused its discretion when it concluded that dismissal was warranted. The district court dismissed the charges against Scafidi because it concluded that the cumulative effect of the destroyed pieces of foreseeably

exculpatory evidence rendered a curative jury instruction insufficient to overcome the prejudice. In light of the above findings that only the text messages were foreseeably exculpatory, we reverse the district court's decision and remand this matter for the district court to consider whether the appropriate remedy is to dismiss the information or to give a curative jury instruction. *See Sanborn v. State*, 107 Nev. 399, 407-08, 812 P.2d 1279, 1285-86 (1991) (discussing when each remedy is appropriate). Accordingly, we

ORDER the judgment of the district court REVERSED AND REMAND this matter to the district court for proceedings consistent with this order.

_____, J.
Parraguirre

_____, J.
Douglas

_____, J.
Cherry

cc:   Hon. Michael Villani, District Judge
      Attorney General/Carson City
      Clark County District Attorney
      Potter Law Offices
      Eighth District Court Clerk